**ROYAL BUSINESS MACHINES, INC., Appellant,**

v.

**The UNITED STATES; Philip M. Klutznick, Secretary of Commerce; Robert E. Herzstein, Under Secretary of Commerce for International Trade, Department of Commerce; Robert E. Chasen, Commissioner of Customs; and John E. Brady, District Director of Customs, Los Angeles, California, Appellees.**

**Smith-Corona Group, Consumer Products Division, SMC Corporation, Intervenor.**

**Appeal No. 81–12.**

United States Court of Customs and Patent Appeals.

Jan. 21, 1982.

Michael S. O'Rourke, Patrick D. Gill, New York City, for appellant.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Washington, D. C., Director, Velta A. Melnbrencis, New York City, for appellees.

Eugene L. Stewart, Terence P. Stewart, Washington, D. C., Edwin Silverstone, New York City, for intervenor.

Before MARKEY, Chief Judge, RICH, BALDWIN, MILLER and NIES, Judges.

MILLER, Judge.

This appeal is from a judgment of the United States Court of International Trade, 1 CIT ——, 507 F.Supp. 1007 (1980), dismissing appellant's action for a writ of mandamus to compel the Customs Service to liquidate certain entries without imposition of antidumping duties. The basis for the action was that the imported merchandise was not within the scope of the antidumping duty order that described the merchandise as portable electric typewriters provided for under item 676.0510, Tariff Schedules of the United States Annotated ("TSUSA"). The Court of International Trade held that, although appellant based its action on 28 U.S.C. § 1581(i), the proper basis was 19 U.S.C. § 1516a (which is within the jurisdiction of the Court of International Trade under 28 U.S.C. § 1581(c)) and, as a consequence, the court was without jurisdiction to hear this case because appellant failed to commence its action within the thirty-day period prescribed by 19 U.S.C. § 1516a. We affirm.

## BACKGROUND

The involved merchandise consists of typewriters imported into this country under the name "ROYAL ADMINISTRATOR" ("Administrator"). The Administrator is manufactured in Japan by Silver Seiko Co., Ltd. ("Seiko") and imported by the Royal Typewriter Company, a division of appellant. On April 9, 1979, the Smith-Corona Group, Consumer Products Division, SCM Corporation ("SCM"),[1] filed a petition with the Commissioner of Customs seeking

---

1. SCM has participated in these appellate pro- ceedings as an intervenor.

initiation of an antidumping investigation concerning specified electric typewriters from Japan expressly including Seiko's Administrator. In addition, SCM indicated that these typewriters were classified under item 676.0510, TSUSA,[2] and that "Royal Typewriter, Hartford" was an importer of the subject merchandise.

Notice of initiation of an antidumping investigation pursuant to SCM's petition was published in the Federal Register on May 18, 1979,[3] and stated:

> ... On April 9, 1979, a petition in proper form was received ... [from SCM], alleging that portable electric typewriters from Japan are being, or are likely to be, sold at less than fair value within the meaning of the Antidumping Act, 1921, as amended (19 U.S.C. § 160 *et seq.*).
>
> For purpose of this notice, portable electric typewriters are provided for in item 676.0510, Tariff Schedules of the United States Annotated.

**2.** Schedule 6, Part 4, Subpart G, of the TSUSA in pertinent part provides:

| ITEM | STAT. SUFFIX | |
|---|---|---|
| | | Typewriters not incorporating a calculating mechanism: |
| 676.05 | | Non-automatic with hand-operated keyboard ....... free |
| | | Portable: |
| | 10 | Electric ......... |
| | 30 | Nonelectric ...... |
| | | Other: |
| | 40 | Electric ......... |
| | 60 | Nonelectric ...... |

The statistical suffix is a statistical extension or breakout authorized by 19 U.S.C. § 1484(e) for statistical purposes and does not affect the rate of duty.

**3.** 44 Fed.Reg. 29191 (1979).

**4.** 45 Fed.Reg. 1220 (1980).

**5.** 45 Fed.Reg. 1220, 1221 (1980). In pertinent part, 19 CFR 153.48 provides:

> § 153.48 Action by the district director of Customs.
>
> (a) *Appraisement withheld; notice to importer.* Upon receipt of advice from the Commissioner pursuant to § 153.35, district directors of Customs shall withhold appraisement as to merchandise entered, or withdrawn from warehouse, for consumption on or after the date of publication of the "Withholding of Appraisement Notice", unless the

Although reference to the Administrator was not made in the notice, in response to an antidumping questionnaire for manufacturers, Seiko stated that—

> [e]leven different portable electric typewriter models are included in the merchandise under consideration, as indicated below:—
>
> . . . .
>
> 10. ADMINISTRATOR.

On December 28, 1979, the General Counsel of the Treasury Department issued a "Withholding of Appraisement Notice" and a tentative determination of sales at less than fair value under 19 U.S.C. § 160, which has to do with dumping investigations. The notice became effective and was published in the Federal Register on January 4, 1980.[4] It directed customs officers to "withhold appraisement of portable electric typewriters from Japan in accordance with [19 CFR 153.48]."[5] Seiko was named one

> Secretary's "Withholding of Appraisement Notice" specifies a different effective date. Each district director of Customs shall notify the importer, consignee, or agent immediately of each lot of merchandise with respect to which appraisement is so withheld. Such notice shall indicate: (1) the rate of duty of the merchandise under the applicable item of the Tariff Schedules of the United States (19 U.S.C. § 1202) if known; and (2) the estimated margin of the special dumping duty that could be assessed. Upon advice of a finding made in accordance with section 153.43, the district director of Customs shall give immediate notice thereof to the importer when any shipment subject thereto is imported after the date of the finding and information is not on hand for completion of the appraisement of such shipment.
>
> (b) *Request to proceed with appraisement.* If, before a finding of dumping has been made, or before a case has been closed without a finding of dumping, the district director of Customs is satisfied by information furnished by the importer or otherwise that the purchase price or exporter's sales price, in respect of any shipment, is not less than the foreign market value (or, in the absence of such value, than the constructed value), the district director shall so advise the Commissioner and request his authorization to proceed with his appraisement of that shipment in the usual manner.

Appellant has not argued that it was not notified of the withholding of appraisement.

of three Japanese manufacturers under investigation, and portable electric typewriters were defined as those provided for in item 676.0510, TSUSA.[6]

The new antidumping provisions of the Trade Agreements Act of 1979 (19 U.S.C. § 1671 *et seq.*) became effective on January 1, 1980; responsibility for their administration was transferred to the Secretary of Commerce.[7] By letter dated January 4, 1980, the Director, Office of Policy, Office of the Assistant Secretary for Trade Administration, Department of Commerce, referred the antidumping investigation to the ITC for an injury determination. Notification of institution of antidumping investigation and scheduling of hearings was published by the ITC on January 17, 1980.[8] Included was a final hearing date for "Portable electric typewriters, provided for in TSUS item 676.05/Japan," which was set for April 10, 1980. The notification concluded as follows:

A report containing preliminary findings of fact prepared by the Commission's professional staff will be made available to all interested persons prior to the hearing. Any person's prehearing statement must be filed on or before the indicated date. All parties that desire to appear at the hearing and make oral presentations must file prehearing statements. . . .

On March 11, 1980, counsel for appellant submitted a letter requesting permission to appear at the final hearing stating:

Royal Business Machines, Inc., is an importer and distributor of various types of office business machines including portable electric typewriters which have been manufactured by Silver Seiko Co., Ltd. *These machines are of the type subject to the determination dated January 4, 1980, by the Treasury Department, that certain portable electric typewriters are being, or likely to be, sold at less than fair value.* Accordingly, Royal Business Machines, Inc., has a proper interest in the subject matter within the meaning of the Regulations and requests to participate in the investigation and hearing before the Commission.

We request a copy of the Commission Staff Report so that we may submit a timely pre-hearing statement prior to the tentative hearing date of April 10, 1980. [Emphasis supplied.]

Notice of the Commerce Department's final determination of sales at less than fair value within the meaning of section 731 of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979[9] (19 U.S.C. § 1673) was published in the Federal Register on March 21, 1980.[10] For purposes of this notice, the typewriters were described in the same way as in the notice of initiation of the investigation, *i.e.*, as those falling within item 676.0510, TSUSA; Seiko was expressly named and discussed as a manufacturer of merchandise under investigation and within the scope of the determination.

In its prehearing statement filed April 8, 1980, appellant, for the first time, argued that the Administrator was not within

---

6. During the injury determination hearing before the International Trade Commission ("ITC"), counsel for appellant admitted that after publication of the "Withholding of Appraisement Notice," liquidation of entries of the Administrator was suspended. Moreover, during a hearing before the Court of International Trade, counsel for appellant admitted that, prior to the publication of this notice, the Administrator was entered and liquidated under item 676.0510, TSUSA; that not until March or April of 1980 were any entries made under item 676.0540, TSUSA; that, despite entry under item 676.0540, an antidumping duty bond had been required of appellant by the Customs Service; and that the entries remained unliquidated.

7. 44 Fed.Reg. 69273 (1979); 45 Fed.Reg. 989 (1980). Section 102(b)(2) of the Trade Agreements Act of 1979 (19 U.S.C. § 1671) requires that ITC conduct antidumping investigations in cases where, prior to January 1, 1980, as here, the Secretary of the Treasury has made a tentative, but not a final determination of sales at less than fair value.

8. 45 Fed.Reg. 3401 (1980) (order was issued January 10, 1980).

9. Pub.L. No. 96–39, 93 Stat. 162.

10. 45 Fed.Reg. 18416 (1980).

ITC's definition of a portable electric typewriter because of its physical characteristics; that "it has been erroneously included by SCM in its complaint and subsequent correspondence . . ."; and that, alternatively, it was not a cause of material injury to SCM. SCM, in its initial petition, prehearing statement, posthearing submission, and other miscellaneous correspondence continuously included the Administrator within the listing of specific merchandise identified as having been sold contrary to the provisions of the antidumping laws.

During the final injury determination hearing before ITC on April 10, 1980, the following colloquy was recorded between Vice Chairman Alberger ("Chairman") and appellant's counsel ("Counsel"):

[Chairman]: . . . Is the tariff classification for the Royal Administrator a portable typewriter or a non-portable?

[Counsel]: . . . [T]he tariff classification is 67605, it is the five-digit number. There are four additional two-digit statistical break-outs. Unfortunately, and I have discussed this directly with the National Advisory Imports specialist who is responsible for typewriters, there is no—within the five-digit classification—there is no room to differentiate between an office typewriter and a portable, because their differentiation is the break-out when the machine has what they call "automatic features", which would be something like a mag card system.

. . . .

So within the five-digit category there is no differentiation. I would submit that we would be properly classifiable under 6760540, which is electric typewriters, other, because there is a break-out for portable typewriters statistically.

[Chairman]: But since it's not coming in anymore, it's not something that you are contesting; is that right?

[Counsel]: Yes, and I might add that, of course there are some entries that have been—that were subsequent to the

Notice of Suspension and Liquidation, so there are unliquidated entries.

But I would add, parenthetically, that as the Commission knows, there is no duty on electric—portable electric typewriters. And, candidly, from a business standpoint, the statistics, whether it's 0510 or 0540 are meaningless, as far as a business person is concerned.

I realize that maybe as far as the Department of Commerce, they would like to see more concern about things like this.

But from a businessman's standpoint, when you are not paying any duty, they just don't—it's not a real concern to break the statistics out.

ITC made a unanimous, affirmative determination "that an industry in the United States is materially injured by reason of imports of portable electric typewriters provided for in item 676.05 of the [TSUS] from Japan," [11] and on May 1, 1980, notified the Secretary of Commerce. In its "Statement of Reasons," when discussing the domestic industry and comparing the imported products, ITC in a footnote stated:

The Royal "Administrator" typewriter for customs purposes is classified as a portable electric typewriter under item 676.05 of the Tariff Schedules of the United States. The "Administrator" is priced competitively with portable electric typewriters and is marketed in much the same way. Thus, for the purposes of this investigation, the Commission has included the Administrator in the category of imports which are subject to this investigation.

Under the "Additional Views of Chairman Catherine Bedell," in a section entitled "*Conclusions of Law,*" it was observed: "The Royal Administrator . . . is appropriately considered a portable electric typewriter for purposes of this investigation."

Notice of the Commerce Department's antidumping duty order appeared in the

---

**11.** "Portable Electric Typewriters from Japan," USITC Publication 1062, 45 Fed.Reg. 30186 (May 1980).

Federal Register on May 9, 1980,[12] and stated:

> This notice is to inform the public that separate investigations conducted under the Antidumping Act ... have resulted in determinations that portable electric typewriters from Japan are being sold at less than fair value and that these sales are materially injuring an industry in the United States. All unappraised entries of this merchandise made on and after January 4, 1980, the date on which liquidation was suspended, will be liable for the possible assessment of special dumping duties. Deposits of estimated antidumping duties shall be required of all entries made on and after the date of publication of this antidumping duty order in the Federal Register.
>
> . . . .
>
> In accordance with [19 U.S.C. § 1673e], Customs officers are directed to assess an antidumping duty equal to the amount by which the foreign market value of the merchandise exceeds the United States price of the merchandise for all entries subject to the "Withholding of Appraisement" notice published in the Federal Register on January 4, 1979 [*sic* 1980] and all future entries until further notice. On or after the date of publication of this notice, Customs officers shall require, at the same time as estimated normal customs duties on the merchandise are deposited, a deposit of estimated antidumping duties pending liquidation of entries of the subject merchandise on all entries, or withdrawals from warehouse, for consumption. Deposits shall be collected in the following amounts: ... Silver Seiko: 36.53 percent *ad valorem* ; . . . .
>
> . . . .
>
> For the purposes of this notice, the term "portable electric typewriters" are those provided for in item 676.0510, [TSUSA].

On May 30, 1980, appellant's counsel submitted a letter to the Import Administration Specialist at the Department of Commerce arguing that the Administrator, because of its physical characteristics, was not within the terms of the May 9, 1980, order and was not subject to special dumping duties, not being classifiable under item 676.0510, TSUSA. The letter acknowledged that "[ITC] in its ruling held that this machine, which is manufactured by [Seiko], in Japan was for the purpose of the investigation classifiable under item 676.05, TSUS," and that "[c]learly, this is the proper five digit TSUS number for the Administrator." However, the letter noted that "the applicable statutes and regulations require that [appellant] use a seven digit number to enter this merchandise" and asserted that "the merchandise is properly classifiable under item 676.0540," TSUSA.

Appellant's letter was forwarded to Customs by the Director, Office of Compliance, International Trade Administration, Department of Commerce. In an accompanying cover letter directed to the Customs Service, Director, Classification and Value Division, it was stated:

> If the models in question are classified under item 676.0540, TSUSA, they would not be within the scope of our Antidumping Duty Order and would not be subject to antidumping duties. However, if they are classified as portable electric typewriters under item 676.0510, TSUSA, they would be within the scope of our finding and subject to antidumping duties.

The letter requested that the Customs Service advise the Commerce Department regarding the proper statistical classification of the merchandise. In response to this request, on August 7, 1980, the Customs Service determined that the Administrator was not classifiable within item 676.0510, TSUSA, and stated:

> ... [W]e believe that [the Administrator is] not subject to the dumping duties. The class or kind of typewriter considered by Commerce and USITC appears to be restricted to those reportable under item 676.0510, TSUSA. Absent a different description of the class or kind of imports,

---

12. 45 Fed.Reg. 30613 (1980).

only those portable electric typewriters reportable in item 676.0510, TSUSA, are subject to the dumping duties. The fact that the Royal Administrator was considered as a portable by Commerce and USITC should not be controlling at this point because the class or kind has been circumscribed by item 676.0510, TSUSA.

Appellant filed its complaint on November 18, 1980, alleging that:

[T]he Court has jurisdiction and ... plaintiff has standing in this matter pursuant to provisions of 5 U.S.C. § 702, 28 U.S.C. § 1581(i), 28 U.S.C. § 2631(i), and 28 U.S.C. § 1585;

It requested that the Court of International Trade:

(1) Issue a temporary restraining order and preliminary injunction enjoining ... [the] Secretary of Commerce, ... Under Secretary for International Trade, Department of Commerce, and their delegatees, officers or agents subordinate to them, from conducting further antidumping proceedings with respect to the Royal Administrator and enjoining [them] from issuing any modification or other alteration of Commerce's antidumping duty order of May 9, 1980 [45 F.R. 30618–19];

(2) Issue a writ of mandamus ordering ... [the] Commissioner of Customs, ... District Director of Customs, Los Angeles, California, their delegatees, officers or agents subordinate to them to

(a) cancel all antidumping duty bonds on current entries of the Royal Administrator made between January 4, and May 9, 1980, and

(b) to remove the Royal Administrator from the list of machines subject to the withholding of appraisement notice published in the *Federal Register* on January 4, 1980, and [*sic* no further subparagraphs]

**13.** 19 U.S.C. § 1516a provides in pertinent part:
19 U.S.C. § 1516a. Judicial review in countervailing duty and antidumping duty proceedings
(a) Review of determination.—
. . . .
(2) Review of determinations on record.—

During proceedings before the Court of International Trade, the government submitted an affidavit of the Deputy Assistant Secretary for Import Administration ("Deputy"), Department of Commerce, who affirmed that:

6. Following the Customs classification ruling, employees of the International Trade Administration's Office of Compliance received written comments from interested parties, including plaintiff's counsel, on the effect of the Customs ruling on the scope of the Department's antidumping duty order.

7. Staff of the Office of Compliance have met with attorney's in the General Counsel's Office to discuss this issue and to make a recommendation as to whether the Department's May 9, 1980, order continues to apply to the Royal Administrator typewriter model.

. . . .

9. ... I have the responsibility and the authority to make the Department's determination as to whether or not the Royal Administrator model typewriter remains within the scope of the May 9, 1980, antidumping duty order.

10. At this time I have not received a final recommendation ... concerning the Department's resolution of this question.

11. At this time I have made no determination as to the Department's position with respect to this question.

The Court of International Trade dismissed appellant's action for lack of jurisdiction because of failure of appellant to bring its action within thirty days after publication of the antidumping duty order in the Federal Register on May 9, 1980, as required by 19 U.S.C. § 1516a ("section 516A").[13] To justify this action, the court said:

(A) In general. Within thirty days after the date of publication in the Federal Register of—
. . . .
(ii) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B),

To begin with, the issuance of a final antidumping duty *order* is purely a ministerial act. It is *not* the final expression of the administrative *determinations*. The final order is really the first step in the *enforcement* of the consequences mandated by statute when it has been determined that certain articles are being sold at less than their fair value and are materially injuring a domestic industry. It is the first step in the mandatory assessment of antidumping duty.

It follows that plaintiff had no more reason to concentrate on the final order and believe itself unaggrieved than a judgment debtor has to think that a questionable execution removes it from a judgment. It further follows that the final order must express the result of the previous determinations without alterations and neither the Commerce Department, as the administering authority, or the Customs Service, by exercise of its classification authority, could legally change the results of the less than fair value and injury determinations or modify the facts or legal conclusions on which those determinations depended.

. . . .

. . . [E]ven if plaintiff believed itself to be an "orange" among "apples", so long as the Department of Commerce and the ITC were considering it to belong to a certain class it remained so for the purpose of the proceedings. The Court has no doubt that the Royal Administrator was included in the administrative investigations from their commencement until their conclusion in final determinations.

Following the specific ITC injury determination the only legal significance of the final antidumping duty order for plaintiff was as a signal that the time to bring an action for judicial review of the less than fair value and injury determinations was beginning to run. At that point the aggrievement had occurred by reason of the inclusion of the plaintiff's product in the *final determinations*, the *final order* could not do less than effectuate the final determinations, and the statutory remedy was available to contest "any factual findings or legal conclusions" underlying the determinations. 19 U.S.C. § 1516(a) [*sic* 1516a].

. . . .

It is plain that the action is directed at the basis of the final *determinations* and not at the final *order*. In view of the fact that plaintiff's actual agrievement [*sic*] was inclusion in the final determinations, it should have brought an action under 19 U.S.C. § 1516a(2). It follows that a later administrative action, if taken in conformity with those final determinations, could not represent a new aggrievement of plaintiff. Thus, if the Department of Commerce now wishes to clarify and perfect the final order to dispel the confusion which has arisen, it may do so.

. . . .

The court notes that the dismissal is not grounded on the basis urged by the defendant, i.e., that the action under 19 U.S.C. § 1516a is the *exclusive* remedy for all grievances arising from the administration of the antidumping law. For *this* grievance the action under 19 U.S.C. § 1516(a) [*sic* 1516a] was an adequate remedy. [Footnotes submitted.]

As foreseen by appellant and authorized by the Court of International Trade in its opinion, the Deputy, Department of Com-

an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing [a summons, and complaint] . . . *contesting any factual findings or legal conclusions upon which the determination is based.* [Emphasis supplied.]

 (B) Reviewable determinations.—The determinations which may be contested under subparagraph (A) are as follows:

 (i) Final affirmative determinations by the Secretary and by the Commission under section 1303 of this title, or by the administering authority and by the Commission under section 1671d or 1673d of this title.

28 U.S.C. § 1581(c) provides for jurisdiction of the Court of International Trade over actions under 19 U.S.C. § 1516a.

merce, issued on February 25, 1981, a "Notice of Clarification of Scope of Antidumping Duty Order and of Correction to Early Determination of Antidumping Duties"[14] as follows:

> This clarification is necessary to insure that articles included within the class or kind of merchandise covered by the Department's and ITC's investigations are within the scope of the order. Accordingly, for purposes of the May 9 antidumping duty order and the August 13 early determination of antidumping duties, the Department defines "portable electric typewriters" as all typewriters currently classifiable under TSUSA 676.0510, and some currently classifiable under 676.-0540, depending on their individual characteristics. The Royal Administrator, therefore, is within the scope of the order.

Appellant argues that it is entitled to the requested relief because the Administrator is not a *portable* electric typewriter, is classifiable under item 676.0540 and not under item 676.0510, TSUSA, so that it is not circumscribed by the literal terms of the antidumping duty order; that to prevent a broadening of the scope of the order to include the Administrator, appellant is entitled to bring an action under 28 U.S.C. § 1581(i)[15] ("section 1581(i)") because that is the only available basis for action; finally, that if, as here, the Department of Commerce modifies the scope of the order, then a cause of action under section 516A arises at the time of such modification.

Both the government and intervenor argue that because the Administrator was actually included in the investigations conducted and the determinations made, because appellant was aggrieved in fact by the suspension of liquidations, and because appellant participated in the proceedings, appellant had a cause of action under section 516A. Further, both make statements indicating that section 516A is the *exclusive* means for contesting the order and that appellant's failure to file its action within the thirty-day statutory period prevented the Court of International Trade from having jurisdiction. The government also argues that the questions raised by appellant regarding the clarifying notice of February 25, 1981, were not before the lower court and should not be decided by this court for the first time on appeal. Because appellant's true aggrievement occurred upon inclusion of the Administrator within the final determinations, intervenor asserts that the later clarifying notice would not constitute a new aggrievement; that administrative tribunals have inherent power to clarify an order to make explicit that which is implied; and that even if section 516A was not the exclusive basis under which to bring a cause of action, appellant is barred by laches.

## OPINION

The issue is whether, as determined by the Court of International Trade, appellant's action is, in effect, under section

14. 46 Fed.Reg. 14006 (1981).

15. 28 U.S.C. § 1581 was enacted as part of the Customs Court Act of 1980, Pub.L. No. 96–417, 94 Stat. 1727, to clearly define the scope of jurisdiction of the Court of International Trade and to establish a comprehensive system for judicial review of disputes arising out of import transactions. It provides in part as follows:
 28 U.S.C. § 1581. Civil actions against the United States and agencies and officers thereof
 . . . .
 (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International

Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
 (1) revenue from imports or tonnage;
 (2) Tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
 (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
 (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

516A because it is "directed at the basis of the final *determinations* and not at the final *order.*" An alternative inquiry is whether appellant's action under 1581(i) is precluded because, as intervenor says: [16]

> As the appellant noted in . . . its complaint . . . 19 U.S.C. § 1516a(a)(2) . . . precludes any interested party "from contesting any matter contained in a final antidumping duty order after the expiration of thirty (30) days after the publishing of such an order." [Footnote omitted.]

In either case, an affirmative conclusion would mean that appellant is barred from contesting the order by failing to bring an action within the thirty-day statutory period provided by section 516A.

Section 516A expressly permits an interested party to commence an action to contest "any factual findings or legal conclusions upon which the determination [of sales at less than fair value and material injury to a United States industry] is based"; also, it requires that any such action be commenced within thirty days after date of publication of the order in the Federal Register.

■ Regarding the alternative inquiry, we agree with the Court of International Trade that section 516A is *not* the "*exclusive* remedy for all grievances arising from the administration of the antidumping law." A possible conflict between sections 1581(i) and 516A was foreseen by Congress and specifically addressed:

> This section [1581(i)] granted the court jurisdiction over those civil actions which arise directly out of an import transaction and involve one of the many international trade laws. The purpose of this section was to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the federal district courts and the Court of International Trade. This language made it clear that all suits of this type are properly commenced only in the Court of Interna-

tional Trade and not in a district court. Thus, the Committee did not intend to create any new causes of action, but merely to designate definitively the appropriate forum.

. . . .

> Subsection (i) is intended only to confer subject matter jurisdiction upon the court, and not to create any new causes of action not founded on other provisions of law.

. . . .

> As in the case of subsection (a) of proposed 1581, it is the intent of the Committee that the Court of International Trade not permit subsection (i), and in particular paragraph (4), to be utilized to circumvent the exclusive method of judicial review of those antidumping and countervailing duty determinations listed in section 516A of the Tariff Act of 1930 (19 U.S.C. § 1516a), as provided in that section. Since subsection (i) merely confers jurisdiction on the court and does not create any new causes of action, H.R. 7540 does not change the rights of judicial review which exist under section 516A.

> The Committee intends that any determination specified in section 516A of the Tariff Act of 1930, or any preliminary administrative action which, in the course of proceeding, will be, directly or by implication, incorporated in or superceded by any such determination, is reviewable *exclusively* as provided in section 516A. For example, a preliminary affirmative antidumping or countervailing duty determination or a decision to exclude a particular exporter from an antidumping investigation would be reviewable, if at all, only in connection with the review of the final determination by the administering authority or the ITC.

> *However, subsection (i), and in particular paragraph (4), makes it clear that the court is not prohibited from entertaining a civil action relating to an antidumping*

---

**16.** The government's brief states that Congress "made no provision for judicial review of . . . antidumping duty orders . . . . The omission of

judicial review for antidumping duty orders was clearly deliberate and not an oversight . . . .".

*or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930.*[17] [Emphasis supplied.]

 It is apparent from this legislative history that Congress envisioned occasions when an aspect of an antidumping duty determination might fall within the court's jurisdiction under section 1581(i). The Customs Regulations indicate that the contents of an antidumping duty determination are multifaceted and that the "factual findings and legal conclusions upon which the determination is based" [18] comprise only one aspect of the determination.[19] Thus, unless there is an express factual finding or legal conclusion with respect to the scope of the antidumping duty order ("description of the merchandise involved"), section 516A would not preclude an action based on section 1581(i).

██ As to whether appellant's action is "directed at the basis of the final *determinations*," it is clear that the factual findings and legal conclusions underlying ITC's determination of material injury were, in part, specifically directed to the description of the merchandise involved. In response to appellant's arguments in its prehearing statement of April 8, 1980, and during the April 10, 1980, hearing, ITC's "Statement of Reasons" and the Chairman's "Conclusions of Law" under her "Additional Views" *expressly* stated that the Administrator was included.[20] Accordingly, any action

brought by appellant to contest the inclusion of the Administrator within the description of merchandise encompassed by the antidumping duty order had to be brought within thirty days after date of publication of the order in the Federal Register. This not having been done, we hold that appellant's action was properly dismissed.

In view of the foregoing, other issues raised by the parties need not be reached.

## COSTS

██ One final matter remains. Appellant has moved to impose on appellee and intervenor the costs of printing six hundred sixty-eight out of nine hundred thirty-six pages of the transcript. Appellant argues that designation of these pages was unnecessary under this court's Rule 5.6(b) because "this information is on file and readily available to the Court." Certain exhibits account for five hundred forty-six pages of the contested printing; the transcript of oral argument before the Court of International Trade on December 16, 1980, accounts for the remainder. In view of the complex factual background of this case, the reliance by *all* parties on many of the exhibits designated by the government and intervenor, and the aid to this court, supplied by the oral arguments before the Court of International Trade, in understanding the issues, we do not agree that the designations are unnecessary, and ap-

17. H.R.Rep. No. 96–1235, 96th Cong., 2d Sess. 33, 47, 48, *reprinted in* [1980] U.S.Code Cong. & Ad.News 3729, 3745, 3759, 3759–60.

18. *See* section 516A, *supra* note 13. The elements of an antidumping duty determination which are specified in section 516A and which may be contested through a section 516A action are the factual findings and legal conclusions underlying the determination. *See* 19 U.S.C. § 1673d(d).

19. 19 CFR 153.39 provides:
Content of determinations.
Whenever the Secretary makes any tentative or final determination, or issues a "Withholding of Appraisement Notice", pursuant to the provisions of this subpart, he shall include in the notice of such determination

published in the FEDERAL REGISTER the following information:
(a) A description of the merchandise involved;
(b) The name of the country of exportation;
(c) If practicable, the name of the manufacturer(s), producer(s), or exporter(s);
(d) The date of the receipt of the information in acceptable form pursuant to the requirements of § 153.27; and
(e) A complete statement of findings and conclusions, and the reasons or bases therefor, on all the material issues of fact or law presented (consistent with requirements of confidentiality under subpart B of this part).

20. *See* note 11 and accompanying text, *supra.*

pellant's motion is denied. *See United States v. Texas Instruments, Inc.*, 64 CCPA 24, 30, C.A.D. 1178, 545 F.2d 739, 744 (1976); *United States v. Parksmith Corp.*, 62 CCPA 76, 83, C.A.D. 1149, 514 F.2d 1052, 1057 (1975); *Sol Kahaner & Bro. v. United States*, 62 CCPA 35, 37, C.A.D. 1141, 509 F.2d 1186, 1187 (1975).

AFFIRMED.

MARKEY, Chief Judge, concurring.

I concur in the result and join the majority opinion, except for that portion dealing with an alternative inquiry respecting 28 U.S.C. § 1581. Having affirmed the Court of International Trade's determination that the action is under section 516a, I would go no further.