**AMERICAN GRAPE GROWERS, et al., Plaintiffs,**

v.

**UNITED STATES, et al., Defendants,**

and

**Joseph E. Seagram & Sons, Inc., et al., Defendants-Intervenors.**

**Court No. 84–4–00575.**

United States Court of International Trade.

March 11, 1985.

Plaia & Schaumberg, Chartered, Washington, D.C. (Herbert C. Shelley, Tom M. Schaumberg, Joel D. Kaufman, George W. Thompson, Washington, D.C., of counsel), for defendant-intervenor Joseph E. Seagram & Sons, Inc.

Schreiber & MacKnight, New York City (William B. Schreiber, New York City, of counsel), for defendant-intervenor Wellington Importers, Ltd.

Office of General Counsel, U.S. International Trade Commission (Michael P. Mabile, Acting Gen. Counsel, Wayne W. Herrington, Washington, D.C., Attorney), for defendant United States.

Heron, Burchette, Ruckert & Rothwell, Washington, D.C. (Thomas A. Rothwell, Jr., Washington, D.C., of counsel), for plaintiffs American Grape Growers Alliance for Fair Trade, et al.

Memorandum Opinion and Order

WATSON, Judge:

In this opinion the Court rules on a motion to dismiss made by defendant-intervenor Joseph E. Seagram & Sons, Inc. (Seagrams), joined in by defendant intervenor Wellington Importers, Ltd. (Wellington) and supported by the defendant International Trade Commission (ITC).

The motion to dismiss attacks the standing of the plaintiffs to bring this action under the Trade Agreements Act of 1979, as well as their "standing" to be petitioners in the administrative proceeding of which this action is a judicial review.

This action was brought to obtain judicial review of the ITC determinations that there was no reasonable indication of material injury or threat of material injury by reason of importations of table wine from France and Italy, which were alleged to be subsidized and sold at less than fair value.[1]

■ The motion has five prongs: In the first, the standing of those plaintiffs who are *grape growers* is attacked on the

ground that they are not "interested parties" within the meaning of 19 U.S.C. § 1516(a). This point is well taken and they must be dismissed from the action.

The term "interested parties," insofar as it is germane here, is limited to producers of a product like that subject to investigation. 19 U.S.C. § 1677(9). Obviously, table wine and grapes are different products. The only possible justification of standing for the grape growers is a reading of the law which would make an exception for agricultural raw products.

Plaintiffs argue that Congress intended to include producers of raw agricultural products within the industry producing the more advanced product. The Court does not agree that this momentous enlargement of the normal understanding of the term industry and of the concept of "like product" is found in the law.

An interested party, in the terms relevant here, is simply defined in 19 U.S.C. § 1677(9)(C), as a producer of a "like product," which is further defined in 19 U.S.C. § 1677(10) as a product like the article subject to an investigation.

It is true that in discussing the question of determining whether an industry is being materially injured the legislators did focus on the "special nature of agriculture," and used the example of the "livestock sector" in which apparently favorable economic signs in the beef producing industry could, in reality, indicate the hardship of the cattle raisers. S.Rep. No. 96–249, 96th Cong., 1st Sess. 88 (1979), U.S.Code Cong. & Admin.News 1979, p. 381. But this recognition of the subtleties of injury determination in the agricultural area is a far cry from the promulgation of a general rule that in all cases the producers of agricultural raw products be joined with the industry producing the final product.

The logic of the legislative concern summarized above extends only to agricultural products which are completely devoted to

---

1. *Certain Table Wines From France and Italy.* Inv. No. 701–TA–210 and 211 (preliminary), USITC Pub. 1502 (March, 1984).

the production of the more advanced product under investigation. Grapes, of which 55 percent are apparently used in wine production, are utilized to a significant extent for other purposes, notably, as fruit and for the production of raisins. The other uses are too extensive to allow the production of grapes to be considered part and parcel of the production of table wine.

The grape growers argue that the ITC has accepted other agricultural raw products as part of an industry producing a more advanced product. They point to investigations in which orange growers were included in the frozen concentrated orange juice industry;[2] sheep growers and feed lot operators were included in the lamb meat industry;[3] sugar beet and sugar cane growers were included in the sugar producing industry;[4] tomato growers were included in the tomato end-product industry;[5] and red raspberry growers were included in the end-product industry.[6]

In those instances however, substantially *all* of the raw product was dedicated to the production of the product under investigation. Assuming this to be a proper understanding of the concept of industry and a correct interpretation of the legislative intent, it still does not benefit the grape growers in this action. Their raw agricultural product is not dedicated to the same extent to the production of table wine. It cannot be accepted that they fall within the original description of interested parties, even when it is given an expansive application to special agricultural situations.

As a final point on the question of the standing of the grape growers, the Court considers this a situation in which it is possible to reason backwards from the amendment made to *include* them in the definition of "industry" in the Trade and Tariff Act of 1984.[7] In some circumstances reasoning from an amendment may be a double-edged sword. It might be a specific expression of something that was already in the law. Here however, it is clear that what has been done is the *addition* of grape growers to a category in which they would normally not belong.

The plain language of the amendment and the limitation of the inclusion to a period of two years[8] strongly suggests that the purpose was the temporary addition of grape growers and not the expression of a permanent pre-existing meaning of the term "industry."

All these considerations lead the Court to conclude that, under the Trade Agreements Act of 1979, grape growers were not part of the industry for the purpose of an investigation of injury to the table wine industry and were not interested parties within the meaning of the law.

The remaining grounds of the motion to dismiss are rejected.

■ The movants assert that those plaintiffs who make table wine were too small a percentage of the table wine industry to be proper petitioners on behalf of that industry. For this proposition, they rely on *Gilmore Steel Corp. v. United States*, 8 CIT ——, 585 F.Supp. 670 (1984). This point, however, is not properly raised in a motion

---

**2.** *Frozen Concentrated Orange Juice From Brazil,* Inv. No. 701–TA–184.

**3.** *Lamb Meat From New Zealand,* Inv. No. 701–TA–80.

**4.** *Sugar From the European Community,* Inv. No. 104–TAA–7.

**5.** *Certain Tomato Products From Greece,* Inv. No. 104–TAA–124.

**6.** *Certain Red Raspberries From Canada,* Inv. No. 731–TA–135.

**7.** The amendment changed the provision which defined industry as producers of a like product to add "except that in the case of wine and grape products subject to investigation under this title, the term also means the domestic producers of the principal raw agricultural product (determined on either a volume or value basis) which is included in the like domestic product, if those producers allege material injury, or threat of material injury, as a result of imports of such wine and grape products."

**8.** Section 626(c)(2) of the Trade and Tariff Act of 1984 provides that the amendment "shall not apply with respect to petitions filed ... after September 30, 1986."

to dismiss on jurisdictional grounds. It does not relate to a party's standing to bring an action in this Court or to any other aspect of the *jurisdiction* of the Court. It attacks one of the implicit determinations of the ITC, namely, the determination that the petitioners were entitled to file a petition in the *administrative* proceeding. Accordingly, it is a subject which is properly part of the judicial review of the substance of the administrative determination. It must await the resolution of the merits of the case.

▆ The movants also single out the Gibson Wine Co. (Gibson) as lacking standing because it was not a "party to the proceeding" before the ITC, even though as a maker of table wine it was an "interested party." On the question of participation in the proceeding, the law is satisfied by any form of notification or participation which reasonably conveys the separate status of a party. The participation requirement is obviously intended only to bar action by someone who did not take the opportunity to further its interests on the administrative level. The Court has also taken the requirement of participation to mean something more than passive membership in an umbrella organization. The listing of Gibson as a co-petitioner in a post-conference brief is sufficient to satisfy these standards. *Zenith Radio Corporation v. United States*, 5 C.I.T. 155 (1983).

▆ The Court's opinion that grape growers are not interested parties leaves the plaintiff association known as American Grape Growers Alliance (the Alliance) with a membership of five interested parties and five others.

Movants argue that this does not give the Alliance a "majority" of members who produce a like product and therefore the Alliance does not meet the standard for a trade association expressed in 19 U.S.C. § 1677(9)(E). The Court agrees that five out of ten does not make a majority in the literal sense. The Court also notes that it has previously denied intervention (the legal equivalent of standing to bring the action) to an organization in which only

four of 14 members produced the product under investigation. *Matsushita Electric Industrial Co., Ltd. v. United States*, 2 C.I.T. 254; 529 F.Supp. 664 (1981).

Nevertheless, it must be understood that the standing requirement for associations was primarily designed to keep out broad-spectrum, general organizations who would always have a few members with direct interest in the product under investigation. The "majority" requirement in the Trade Agreements Act of 1979 was explained as follows in the report of the Senate Committee on Finance:

> This limitation is believed to fairly delimit those groups with sufficient interest to always be considered interested parties. An association representative of importers generally, or business generally, would not be considered an interested party under this limitation, although a sub-group of such an association may qualify.

S.Rep. 96–249, 96th Cong., 1st Sess., 90 (1979), U.S.Code Cong. & Admin.News 1979, p. 476.

In the opinion of the Court the remedial purpose of this provision, intended as it was to set a fair standard for access to judicial review, justifies the conclusion that an organization should have standing in the peculiar situation where interested parties are *half* of the membership. At the midpoint the proportion of membership with undeniable interest is sufficient to fall within the intention of the law.

As a result of the considerations expressed above, the Court dismisses from this action the Raisin Bargaining Association, the New York State Wine Grape Growers, the National Grape Cooperative Association, the California North Coast Grape Growers, and the Washington Association of Wine Grape Growers. While these organizations may have some members who are table wine producers they have not been shown to individually meet the statutory standing requirements. As to the remaining plaintiffs, the motion is DENIED.