**BADGER–POWHATAN, a DIVISION OF FIGGIE INTERNATIONAL, INC., Plaintiff,**

**v.**

**UNITED STATES, et al., Defendants,**

**Rubinetterie A. Giacomini, S.P.A., Defendant-Intervenor.**

**No. 85–3–00324.**

United States Court of International Trade.

April 29, 1985.

Stewart & Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Charles A. St. Charles, Washington, D.C., Robin R. Starr, Richmond, Va., Figgie Intern., of counsel, for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., Kevin C. Kennedy, Sandra M. Morewitz, U.S. Dept. of Commerce and Marcia Sundeen, U.S. Intern. Trade Com'n, Washington, D.C., of counsel, for defendants.

Law Office of Larry Klayman, Larry Klayman and John M. Gurley, Washington, D.C., for intervenor.

FORD, Judge:

Plaintiff, a domestic producer of brass fire protection products, seeks relief in the nature of mandamus to compel the United States Department of Commerce to amend antidumping order issued in the investigation of *Certain Brass Fire Protection Products from Italy.* 50 Fed.Reg. 8354. More specifically, plaintiff seeks to include within the scope of antidumping order five imported products found not to have caused material injury to a United States industry. Defendants and intervenor oppose plaintiff's application and cross-move for order dismissing plaintiff's complaint for failure to state a claim upon which relief can be granted. Jurisdiction is pursuant to 28 U.S.C. § 1581(i)(4).

The factual background of this action is not in dispute. On January 23, 1984, plaintiff filed an antidumping duty petition with the Department of Commerce and the International Trade Commission (ITC). The petition alleged that imports of brass interior fire protection products from Italy were being sold in the United States at less than fair value (LTFV) and causing material injury to the domestic industry. The International Trade Administration (ITA) published a notice of initiation of antidumping investigation on February 21, 1984. 49 Fed.Reg. 6396. Following an affirmative preliminary injury determination by the ITC, the ITA published affirmative preliminary determination of sales at less than fair value. 49 Fed.Reg. 28083.

On November 30, 1984, the ITA published its final affirmative LTFV sales determi-

nation. 49 Fed.Reg. 47066. In that determination, the scope of the investigation was described as follows:

*Scope of Investigation*

The merchandise covered by this investigation includes: Fire hose couplings (1½ and 2½ inch), fog/straight stream nozzles (1½ and 2½ inches), angle-type hose gate valves (1½ and 2½ inch), wedge-disc hose gate valves (2½ inch), single and double clapper siamese fire department connections (2½ inch inlets and 4 inch outlets), pressure restricting valves, and pressure regulating valves. This merchandise is currently classified under the following item numbers of the Tariff Schedules of the United States (Annotated): fire hose couplings—657.-3540, fog/straight stream nozzles—680.-1480, angle-type hose gate valves—68.-1440, wedge-disc hose gate valves—680.-1430, single and double clapper siamese fire department connections—680.1420, pressure restricting valves—680.1440, and pressure regulating valves—680.-2740.

Having found domestic production of each of the seven articles subject to the investigation, the ITC, on February 27, 1985, issued a final affirmative injury determination with respect to two of the like products investigated.[1] 50 Fed.Reg. 7791. For the remaining five products, the ITC found no material injury to the respective domestic industries. Thereafter, on March 1, 1985, the ITA published an antidumping order directing the Customs Service to collect estimated antidumping duty deposits on the two products subject to the ITC's affirmative injury determinations. 50 Fed. Reg. 8354. It is from this order that plaintiff seeks relief in the nature of mandamus.

Section 731 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673 (1982), provides:

Imposition of antidumping duties

If—

(1) the administering authority determines that a class or kind of foreign merchandise is being, or is likely to be sold in the United States at less than its fair value, and

(2) the Commission determines that—

(A) an industry in the United States—

(i) is materially injured, or

(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materially retarded,

by reason of imports of that merchandise, then there shall be imposed upon such merchandise an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise.

Section 736(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673e(a) (1982), provides in part:

(a) Publication of antidumping duty order

Within 7 days after being notified by the Commission of an affirmative determination under section 1673d(b) of this title, the administering authority shall publish an antidumping duty order which—

(1) directs customs officers to assess an antidumping duty equal to the amount by which the foreign market value of the merchandise exceeds the United States price of the merchandise, . . .

\* \* \* \* \* \*

(2) includes a description of the class or kind of merchandise to which it applies, in such detail as the administering authority deems necessary, and

(3) requires the deposit of estimated antidumping duties pending liquidation of entries of merchandise at the same time as estimated normal customs duties on that merchandise are deposited.

---

1. The two products found by the ITC to be materially injuring the corresponding United States industries are single and double clapper siamese fire department connections and pressure restricting valves.

Plaintiff contends the subject antidumping order impermissibly excluded particular products from the class or kind of merchandise lawfully subject to antidumping duties. In view of this exclusion, plaintiff urges a writ of mandamus should issue to compel the Department of Commerce, specifically the ITA, to correct the antidumping duty order to conform to the requirements of the statute. Plaintiff does not, by this action, challenge the LTFV sales and material injury determinations made at the administrative level.

Defendants respond that, absent a causal nexus between dumped merchandise and injury to an industry, an antidumping order cannot be entered against merchandise which is not causing injury to a domestic industry. Defendants further suggest where other grounds for relief exist, a writ of mandamus, being an extraordinary remedy, should not issue.

The essence of this dispute involves the conflicting interpretations of 19 U.S.C. § 1673 advanced by the respective parties. Plaintiff proposes an extremely literal interpretation of the statute. Since the ITA found a class or kind of merchandise was being sold in the United States at less than fair value, and the ITC found material injury in two of the seven industries involved, plaintiff concludes the antidumping order should have required estimated duties to be deposited on all seven like products included in the investigation. Thus, under plaintiff's interpretation of § 1673, injury to one industry is all that is required to issue an antidumping duty order covering the entire class or kind of merchandise being sold at less than fair value.

Defendants maintain § 1673 provides for imposition of antidumping duties if the ITA finds a class or kind of merchandise is being sold at less than fair value *and* the ITC determines an industry is materially injured or threatened with such injury by reason of imports of that merchandise. In defendants' view, both affirmative LTFV sales and material injury determinations are required before the ITA is authorized to issue an antidumping duty order.

■ The issue presented by these conflicting interpretations, in its most narrow sense, is whether the term "such merchandise", as used in § 1673 (supra), refers to the entire class or kind of merchandise being sold at less than fair value or only that merchandise upon which both affirmative LTFV sales and material injury determinations have been made. For reasons set forth below, the Court finds the term "such merchandise" refers to that merchandise which satisfies both the LTFV sales and injury criteria.

19 U.S.C. § 1673d(c)(2) provides in part:

Issuance of order; effect of negative determination.—If the determinations of the administering authority and the Commission under subsections (a)(1) and (b)(1) of this section are affirmative, then the administering authority shall issue an antidumping duty order under section 1673e(a) of this title. If either of such determinations is negative, the investigation shall be terminated ...

Under this section of the statute, an antidumping order can be issued only where the ITA's and the ITC's determinations are both affirmative. If the ITC material injury determination is negative as to merchandise within the class or kind of merchandise being sold at less than fair value, the ITA has no authority to issue an antidumping order with respect to that merchandise. This is so irrespective of the ITA's own affirmative LTFV sales determination.

■ Section 731, as amended by the Trade Agreements Act of 1979, 19 U.S.C. § 1673, reaffirmed the basic standard for the imposition of antidumping duties enunciated in the Antidumping Act of 1921. S.Rep. No. 249, 96th Cong., 1st Sess. 61 (1979), U.S.Code Cong. & Admin.News 1979, p. 381. The antidumping law is remedial, not punitive in nature. It was designed to protect domestic industry from sales of imported merchandise at less than fair value which either caused or threatened to cause injury. *City Lumber Co. v. United States*, 64 Cust.Ct. 826, 311 F.Supp. 340 (1970), *aff'd*, 59 CCPA 89, 457 F.2d 991

(1972). Where the domestic industry is not injured, it cannot avail itself of the relief accorded under the antidumping statute. Moreover, inclusion of the phrase "by reason of" in § 1673 is indicative of a causal nexus between the LTFV imports and the injury requirement. This conclusion is well-supported by examination of the legislative history of the antidumping provisions. See, e.g., S.Rep. No. 249 at 74, 75; H.R.Rep. No. 317 at 44.

Plaintiff characterizes the ITC finding of material injury in only two of the seven industries investigated as "re-defining" the "class or kind" of merchandise for which there was an affirmative LTFV sales determination. However, the ITC has on prior occasions found more than one industry to exist within a single class or kind of merchandise as described by the ITA in its final affirmative antidumping duty determinations. The ITA has in turn published a final order conforming to and coterminous with the ITC's industry and injury determinations. *Compare Color Television Receivers from the Republic of Korea and Taiwan*, No. 731–TA–134, USITC Pub. 1514 (April 1984) (two industries, only one of which was injured, found to exist within one class or kind of merchandise) *with* 49 Fed.Reg. 17,824 (1984) (final order coextensive with scope of ITC's injury determination); *Certain Welded Carbon Steel Pipes and Tubes from the Republic of Korea and Taiwan*, No. 731–TA–131, 132 and 138, USITC Pub. 1519 (April 1984) (two rectangular pipe and tube industries, only one of which was injured, found to exist within one class or kind of merchandise) *with* 49 Fed.Reg. 20,045 (1984) (final order coterminous with injury determination); *Certain Radio Paging and Alerting Receiving Devices from Japan*, No. 731–TA–102, USITC Pub. 1410 (Aug. 1983) (two industries, only one of which was injured, found to exist within one class or kind of merchandise) *with* 48 Fed.Reg. 37,058 (1983) (final order coterminous with injury determination).

If taken to its logical conclusion, plaintiff's interpretation of § 1673 would require an affirmative material injury determination in only one industry for the issuance of an antidumping order covering the entire class or kind of merchandise being sold at less than fair value. Such an incongruous result would violate the basic tenets of antidumping duty law.[2] Plaintiff's interpretation would render the ITC's role in an antidumping investigation meaningless, as there would be no need to determine the like product or products, industry or industries affected, and injury to the industry or industries. Section 1673 must be construed in connection with the other provisions of the law in this field. The fact that § 1673 may be subject to more than one interpretation does not warrant a construction which contradicts both the vast body of antidumping duty law and the well-established administrative schema.

In *Royal Business Machines, Inc. v. United States*, 1 CIT 80, 507 F.Supp. 1007, aff'd, 669 F.2d 692 (1980), the Court noted:

> "It is plain that the action is directed at the basis of the final determinations and not at the final order. In view of the fact that plaintiff's actual ag[g]rievement was inclusion in the final determinations, it should have brought an action under 19 U.S.C. § 1516a(2)." *id.* at 88.

In the case at bar, plaintiff's actual aggrievement is exclusion from the final ITC determination of material injury. "The final order could not do less than effectuate the final determinations." *Royal Business Machines* (supra) at 88.

A writ of mandamus is an extraordinary remedy, available only in extraordinary circumstances and when no meaningful alternatives are available. The Court's power to issue a mandamus under the All Writs Act (28 U.S.C. § 1651(a)) is limited to situations in which such action is necessary or appropriate in aid of its jurisdiction. *Canadian Tarpoly Co. v. U.S.*

---

**2.** As noted by intervenor at the hearing held before the Court, plaintiff's interpretation of § 1673 would, in this instance, subject 71 per cent of the class or kind of merchandise to the antidumping order without the requisite ITC affirmative injury determination.

*International Trade Commission,* 640 F.2d 1322, 68 CCPA 121 (1981).

To grant the requested writ of mandamus in this instance would further serve to grant the ultimate relief available had plaintiff chose to bring an action under § 1516a. If plaintiff's request is framed as an issue of statutory construction, as a question of law the appropriate avenue of recourse is similarly a § 1516a action. Had the ITA refused to issue the antidumping order following the affirmative determinations, a mandamus action to compel the performance of a ministerial act would have been appropriate. This is not the situation presented here, and there being no challenge to the Court's jurisdiction over this matter, relief in the nature of mandamus must be denied.

Accordingly, for the reasons set forth herein, plaintiff's application is denied, defendants' and intervenor's cross-motion is granted, and this action is hereby dismissed.