**BROTHER INDUSTRIES, LTD. and Brother International Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

**and**

**Smith–Corona Corporation, Defendant–Intervenor.**

**Court No. 91–09–00696.**

United States Court of International Trade.

March 12, 1992.

Tanaka Ritger & Middleton, H. William Tanaka and Patrick F. O'Leary, Washington, D.C., for plaintiffs.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, U.S. International Trade Com'n, Abigail A. Shaine and Elizabeth C. Hafner, Washington, D.C., for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Todd C. Fineberg, Washington, D.C., for defendant-intervenor.

OPINION

RESTANI, Judge:

This matter is before the court on defendant's motion to dismiss for lack of standing. The action challenges an International Trade Commission ("ITC") final affirmative injury determination under the antidumping laws in *Certain Personal Word Processors from Japan*, USITC Pub. 2411, Inv. No. 731–TA–483 (Aug. 1991).

## BACKGROUND

Although the Commerce Department ("Commerce" or "ITA") found one class or kind of relevant imported merchandise for purposes of its less than fair value ("LTFV") determination, ITC found two separate like domestic products, one consisting of personal word processors ("PWP's"), with respect to which it reached an affirmative injury finding, and another consisting of office typing systems ("OTS's"), with respect to which it reached a negative injury determination. Plaintiff Brother Industries, Ltd. ("Brother Japan") is a Japanese producer-exporter of OTS's. Plaintiff Brother International Corporation is the sole U.S. importer and distributor of OTS's produced by its Japanese parent. It is also the sole U.S. distributor of PWP's manufactured by Brother Industries (USA) Corp. ("Brother USA"). Brother USA is a wholly owned subsidiary of Brother Japan. It manufactures PWP's in Tennessee.

It is undisputed that plaintiffs, as of the close of 1991, have ceased to enter PWP's manufactured in Japan into the United States. Apparently all of plaintiffs' PWP production has been transferred to the United States, which is the largest PWP market. The Brother USA plant is apparently more cost-effective than the Japan facility. It is also undisputed that plaintiffs have no plans to resume PWP exportation or importation into the United States, whatever the results of this litigation. Thus, the shift in production is unrelated to the antidumping proceedings.

Although plaintiffs participated in the proceedings before ITC, the government now alleges that plaintiffs are no longer interested parties within the meaning of the standing statute and that they have no standing to bring this action under the governing statute or the Constitution.

## DISCUSSION

The statutes governing judicial review of ITC determinations provide in relevant part:

an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade ...

19 U.S.C. § 1516a(a)(2)(A) (1988), and

[a] civil action contesting a determination listed in section 516A of the Tariff Act of 1930 may be commenced in the Court of International Trade by any interested party who was a party to the proceeding in connection with which the matter arose.

28 U.S.C. § 2631(c) (1988). Thus, the standing requirement is twofold. The statute requires that a party must be interested and must have participated before ITC. *See, e.g., Citrosuco Paulista, S.A. v. United States,* 12 CIT 1196, 1199–1201, 704 F.Supp. 1075, 1081–82 (1988) (denying intervention to marketing association which was party to administrative proceedings but was not interested party because members did not produce a "like product"); [1] *Special Commodity Group on Non–Rubber Footwear From Brazil v. United States,* 9 CIT 481, 482–83, 620 F.Supp. 719, 721–22 (1985) (finding trade association had standing to intervene as interested party though percentage of membership producing or selling like product changed from majority during administrative proceeding to 47 percent when action commenced); *Matsushita Elec. Industr. Co. v. United States,* 2 CIT 254, 256–57, 529 F.Supp. 664, 667–68 (1981) (denying intervention to trade organizations which were not interested parties under statute and unions which were not parties to administrative proceeding).

As plaintiffs clearly participated in the relevant administrative proceedings, the issue to be decided is whether they are interested parties, as defined in the statute. The term "interested party" is defined to include *inter alia:*

a foreign manufacturer, producer, or exporter, or the United States importer, of merchandise which is the subject of an investigation under this subtitle ...

---

**1.** 19 U.S.C. § 1677(9)(E) (1988) provides that "interested party" includes "a trade ... association a majority of whose members manufacture, produce, or wholesale a like product in the United States."

19 U.S.C. § 1677(9)(A). In statutory terms, the question presented here is whether the merchandise of the manufacturer, exporter or importer "is the subject of an investigation." The use of the present verb tense in the statute suggests that if the merchandise manufactured, exported or imported by the plaintiffs ceases to be the subject of the investigation, then the plaintiffs are no longer interested parties. Such a construction is also consistent with the intent of the statute.

In *American Grape Growers v. United States*,[2] 9 CIT 103, 604 F.Supp. 1245 (1985) and in *Special Commodity Group on Non–Rubber Footwear from Brazil*, 9 CIT 481, 620 F.Supp. 719, this court allowed certain trade associations to participate as interested parties although less than a clear majority of members produced like products. In both cases the court adopted a broad view of the term "majority of members." In finding that the relevant trade association had a strong interest in the litigation, the court in *Special Commodity Group*, 9 CIT at 483–84, 620 F.Supp. at 722, stated that the intent of Congress was that those "with only a slight interest should not be allowed to intervene." Parties lacking a real stake in the outcome of antidumping litigation do not have standing.

Plaintiffs argue that it is not so clear that they lack a stake in the litigation. Plaintiffs contend that should future redefinition of the scope of relevant antidumping orders embrace their product, they would be affected by the determination at issue here. They cite three possibilities. First, they argue OTS's could be redefined by ITA to include their product. ITA is currently in the process of conforming its antidumping order to ITC's partially negative determination, in conformance with *Badg-er–Powhatan v. United States*, 9 CIT 213, 608 F.Supp. 653 (1985). The process of conformation would seem to present no occasion for redefining the covered class to include plaintiffs' product.

Second, plaintiffs assert that the domestic industry is currently litigating the exclusion of PWP parts from the scope of the ITA determination and plaintiffs are still manufacturing, exporting or importing such parts. There has been no showing in this case that there is any likelihood of success in such litigation or even that it presents an arguable question. In any case, ITC admits that if the scope definition were altered to the extent that PWP parts were covered, a new injury determination pertaining to the domestic industry producing parts would be required. Presumably, if plaintiffs deal in such parts, they would be interested parties for purposes of such proceedings and the ensuing litigation.

Third, plaintiffs argue that future scope or anticircumvention proceedings may result in an antidumping order which applies to their merchandise. Plaintiffs certainly do not allege that anything they are doing or plan to do would violate the anticircumvention statutes, nor can they describe exactly how an ITA redefinition of scope may come to affect them. Thus, such eventualities would seem to be extremely speculative. In any case, various remedies are available if such scenarios come to pass.[3]

Accordingly, the court finds plaintiffs are not interested parties. They are not manufacturers, exporters or importers of merchandise which *is* the subject of the investigation they seek to have reviewed. Furthermore, assuming *arguendo* that those whose merchandise is likely to come within the purview of the investigation are also interested parties within the meaning

---

**2.** The court in *American Grape Growers* held that a trade association had standing although only one-half of the membership (five out of ten parties) produced a "like product." 9 CIT at 106, 604 F.Supp. at 1249.

**3.** *See, e.g.*, 19 U.S.C. § 1675(b)(1) (1988) (permitting review of ITC determination upon showing of "changed circumstances"); 19 U.S.C. § 1677j(e) (1988) (requiring Commerce to notify ITC of intent to include merchandise within scope of existing order, and permitting ITC to request consultations with Commerce and advise on whether inclusion would be inconsistent with prior affirmative injury determination); *Brother Industr., Ltd. v. United States*, 15 CIT ——, ——, 769 F.Supp. 374, 378–79 (1991) (stating ITC's response to Commerce under 19 U.S.C. § 1677j(e) is reviewable as an element of Commerce's record).

of the statute, plaintiffs have shown no such likelihood.[4] Plaintiffs satisfy neither the technical language of the statute nor the intent of Congress that parties have a genuine interest in the litigation they pursue.

## JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED: that this case is hereby dismissed for lack of standing.

---

**4.** As plaintiffs do not satisfy the requirements for statutory standing, the court declines to explore constitutional requirements of standing or to resolve the question of whether the statutory requirements are more or less strict than constitutional requirements.