**YUASA–GENERAL BATTERY CORPORATION, General Battery Corporation, Plaintiffs,**

v.

**UNITED STATES, United States International Trade Commission, Defendants,**

and

**Taiwan Electric Appliance Manufacturers Association et al., Intervenor–Defendants.**

No. 85–04–00483.

United States Court of International Trade.

July 12, 1988.

Brownstein Zeidman and Schomer (Steven P. Kersner, Donald S. Stein and Ronald M. Wisla), Washington, D.C., for plaintiffs.

Office of General Counsel, U.S. Intern. Trade Commission (Lyn M. Schlitt, James A. Toupin and Judith M. Czako), Washington, D.C., for defendants.

Ablondi & Foster, p.c. (Italo H. Ablondi, F. David Foster and Sturgis M. Sobin), Washington, D.C., for intervenor-defendants.

## MEMORANDUM

AQUILINO, Judge:

The U.S. International Trade Commission has issued the results of its reconsideration of whether there is reasonable indication that the 12–volt-motorcycle-battery industry in the United States is threatened with material injury by reason of imports from Taiwan. That reconsideration was carried out pursuant to an order of this court in conjunction with, slip op. 87–60, 11 CIT ——, 661 F.Supp. 1214 (1987), and resulted in four opinions of the Commissioners.

### Renewed Negative Determination

A majority, consisting of Commissioners Liebeler and Brunsdale and Commissioner Rohr, again reached a negative preliminary determination, concluding that, on the record, there is no reasonable indication of a threat of material injury to the domestic industry by reason of imports from Taiwan. Commissioners Eckes and Lodwick dissented in separate opinions.

After reconsideration of the record in the light of the factors set forth in section 612(a)(2)(B) of the Trade and Tariff Act of 1984, 19 U.S.C. § 1677(7)(F)(i), and slip op. 87–60, the Chairman and Vice–Chairman conclude in their joint opinion that the domestic industry's condition is "healthy" and its performance "generally improving" and therefore that "it is likely to withstand competition from increased imports of 12–volt motorcycle batteries from Taiwan without imminent material injury." Remand Results at 1 and 2.

In his opinion, Commissioner Rohr describes the standard he applied as follows:

... [I]f I find that there is clear and convincing evidence that imports do not pose a real and imminent threat of actual material injury, and conclude that there is no liklinood [*sic*] that the information to be obtained in a final investigation would change that conclusion, I must make a negative determination. *Id.* at 15.

After considering the § 1677(7)(F)(i) factors, the Commissioner concludes that "[f]uture imports are thus likely to have an adverse effect"[1] on the domestic industry:

... However, the ultimate conclusion that the statute requires me to make is not whether there is a reasonable indication that future imports will have an

---

1. Remand Results at 24. *See id.* at 25, n. 28 ("The Commission recognized that the current trends in imports (based on the Section 771(7)(F)(i) factors) were likely to continue and would have an adverse effect on the industry") and at 28 ("a consideration of the Section 771(7)(F) factors leads to the conclusion that future imports are likely to have an adverse effect on the industry").

adverse effect on the industry. It is whether that adverse effect will be a cause in a decline in the condition of the industry to the point where it is actually experiencing material injury within a time frame that is "imminent." To reach that conclusion, one must understand the condition of the domestic industry. *Id.* at 24.

Commissioner Rohr's stated understanding of the domestic condition is one of "overall positive operating conditions" and "improvement ... over the period of investigation", and he concludes that "even the adverse effects that the trends in imports presage for the future can[not] reasonably be said to indicate a real and imminent threat of material injury." *Id.* at 27.

Commissioner Eckes states from his perspective (in dissent) that

the Commission as a matter of law is required to continue this investigation. The available record *does not* contain clear and convincing evidence that there is no threat of material injury, and *it is likely* that additional evidence will emerge in a final investigation to support appellant's point of view. Indeed, for each of the statutory factors the Court has directed the Commission to reconsider, the record of this investigation supports at the preliminary stage a threat determination, if the rule of *American Lamb [Co. v. United States,* 785 F.2d 994 (Fed.Cir.1986) ] is followed. *Id.* at 30 (emphasis in original).

Also in dissent, Commissioner Lodwick considers the record in the light of all the relevant statutory factors, as well as the *American Lamb* decision, and concludes that

there is a reasonable indication that an industry in the United States is threatened with material injury by reason of imports of allegedly less-than-fair-value 12–volt motorcycle batteries from Taiwan; the threat of material injury is real and actual injury is imminent; the record as a whole does not contain clear and convincing evidence that there is no threat of material injury; the record as a

whole does not support a determination that no likelihood exists that contrary evidence will arise in a final investigation. *Id.* at 46.

### Discussion

As indicated by the foregoing excerpts from the Commissioners' differing views, each recognizes the intervening decision of the court of appeals in *American Lamb Company v. United States,* 785 F.2d 994 (Fed.Cir.1986). Indeed, that case effectively foreclosed plaintiffs' primary point in support of their challenge to the ITC's negative determination of material injury herein. *See* Slip Op. 87–60, 11 CIT at ——, 661 F.Supp. at 1216.

In analyzing the standard for review of an ITC negative preliminary determination in the Court of International Trade, the Federal Circuit reasoned as follows in its *American Lamb* opinion:

Since the enactment of the 1974 Act, ITC has consistently viewed the statutory "reasonable indication" standard as one requiring that it issue a negative determination, as above indicated, only when (1) the record as a whole contains clear and convincing evidence that there is no material injury or threat of such injury; and (2) no likelihood exists that contrary evidence will arise in a final investigation. That view, involving a process of weighing the evidence but under guidelines requiring clear and convincing evidence of "*no* reasonable indication", and no likelihood of later contrary evidence, provides fully adequate protection against unwarranted terminations. Indeed, those guidelines weight the scales in favor of affirmative and against negative determinations. Under the appropriate standard of judicial review, ITC's longstanding practice must be viewed as permissible within the statutory framework. 785 F.2d at 1001 (emphasis in original).

If this then is the standard for assessing the challenged views of the majority[2], in

---

2. Defendants' memorandum states (at page 28)    that "[t]here is no question in this case" that this

its own terms it is weighted "in favor of affirmative and against negative determinations." While the opinions at issue reflect thoughtful compliance with the court's remand and are entitled, in any event, to judicial deference, they are unpersuasive that the requirement of *clear* and *convincing evidence* of *no reasonable indication* of a *threat* of material injury and *no likelihood* of later contrary evidence is sustainable on the existent record.

In attempting to sift the record's contents cited by the court in slip op. 87–60, 11 CIT at ——, 661 F.Supp. at 1220–22, familiarity with which is presumed in this memorandum, the opinions in the majority do not appear to take the approach *American Lamb* contemplates. For example, the plurality seems to have considered the evidence for an indication of the affirmative, rather than of the negative. With regard to production capacity, the plurality opinion concludes that "[n]either the modest gain in total productive capacity nor the relatively steady percentage of capacity utilization rate provide sufficient indication of threat of material injury." Remand Results at 7. With regard to market penetration, "the increase ... was not that rapid, given the expanding domestic market, and was not sufficient to indicate a threat of material injury in this case." [3]

The plurality attempts to support its view on foreign production capacity by dismissing "[a]t least a portion of the large increase [in Taiwan] between 1983 and 1984 [a]s attributable to improved reporting, which makes the numbers difficult to compare directly." *Id.* at 7. Apparently, two of the surveyed producers had failed to give their data for the years 1982 and 1983, whereupon their production capacities were subtracted by the plurality from the 1984 total to lower the 1983–1984 overall percentage increase to 3.63.

The record also shows, however, capacity increasing during a time when unused capacity remained steadily high, to wit, 42.4 percent in 1982, 35.6 percent in 1983, and 39.7 percent in 1984. *Cf.* R.Doc. 47 at A–17. These figures are of consequence, especially considering, as Commissioner Lodwick does in his dissenting views, that unused Taiwanese production capacity for 1984 alone represented 173 percent of its 1984 exports to the United States. Remand Results at 42. Furthermore, the record shows that Taiwanese producers target nearly three-quarters of their total battery exports at the United States, a fact not discussed by the plurality.

The plurality opinion does discuss the rapid, 141 percent increase in imports over the surveyed period. However, the opinion characterizes the market-share increase of the Taiwan imports as "moderate" [4], apparently because the domestic industry had increased its imports by 81 percent. *See id.* at 9, n. 30. On his part, Commissioner Rohr acknowledges that, while taking such "captive" imports into account "lowers the absolute import penetration level, [it] actually increases the rate at which import penetration increased." *Id.* at 19. Also, during this period of high import penetration levels, the domestic market was expanding, yet the domestic producers' share of this market was diminishing. [5]

As for the probability that the imports will have a depressing or suppressing ef-

is the standard applicable. *See also* Reply of Defendant–Intervenors, pp. 4–13.

**3.** Remand Results at 9. The increase found was from 241,000 units (estimated) in 1982 to 620,-000 units in 1984 or 141 percent.

Included in the Commission's remand papers before the court is a version of the plurality opinion which concludes (at page 12) that "there is no clear and convincing evidence in the record that would reasonably indicate a threat of imminent material injury to the domestic industry by reason of allegedly LTFV imports of 12-volt motorcycle batteries." While the language was reformulated to "find clear and convincing evidence that there is no threat of imminent material injury", the reasoning upon which this conclusion is sought to be based does not show that the *American Lamb* approach to weighing the evidence was actually taken.

**4.** Remand Results at 9.

**5.** Remand Results at 43 (Commissioner Lodwick dissenting) ("[m]arket shares and what they portend for the U.S. industry thus appear as a significant factor in assessing threat in this investigation").

fect on domestic prices, the plurality opinion states that

> it is not probable that the imports could have had a significant price depressing or suppressing effect on U.S. prices in the near future that would have resulted in material injury. *Id.* at 10.

Commissioner Rohr reached the same result. While admitting that the documented "fact of underselling supports the possibility that there was a price suppressive or depressive effect" [6] and "that there is likely to continue to be underselling by imports of the *domestic industry's* prices" [7], he concludes from the "anecdotal evidence" that this underselling is not likely to have a "significant" price depressive or suppressive effect. *Id.* at 22. A footnote states that there

> is no evidence in the record which would indicate how or why imports which are not currently having a price depressive or suppressive effect will develop such an effect in the future. *Id.,* n. 22.

Nonetheless, as indicated in slip op. 87–60, the evidence in the record shows underselling by the imports in five of eight quarters for one battery model and in seven of the eight for the other battery, with underselling occurring in all four quarters of 1984 for both models. This period of underselling was also marked by a substantial drop in prices for both imported and domestic batteries. *See* R.Doc. 47 at A–22. While this scenario may not reflect, in the Commission's view, present material injury, reasonable indication of threat of such injury cannot be easily discounted in the face of this kind of evidence, and on which the statute focuses.

In passing the Trade and Tariff Act of 1984, Congress recognized that "the projection of future events is necessarily

more difficult than the evaluation of current data." H.Conf.Rep. No. 1156, 98th Cong., 2d Sess. 174 (1984), U.S.Code Cong. & Admin.News 1984, pp. 4910, 5291. That report also states that "the purpose of the threat provision is to prevent actual material injury from occurring." [8] It is thus understandable that the Federal Circuit concluded in *American Lamb* that the ITC's guidelines "weight the scales in favor of affirmative and against negative determinations." The requirement of "clear and convincing evidence of '*no* reasonable indication'" of a threat of material injury is a standard that the majority's analyses of the present record, however thoughtful, fail to satisfy. Thus, this court is constrained to conclude that they represent an abuse of discretion within the meaning of 19 U.S.C. § 1516a(b)(1)(A) and that further investigation is called for. While such investigation of the period now past may prove the wisdom of those preliminary views, the law requires additional administrative action—on the record that has already been made.

The renewed preliminary determination that there is no reasonable indication of a threat of material injury to the 12–volt-motorcycle-battery industry in the United States by reason of imports from Taiwan must be reversed, and judgment will enter accordingly.

### JUDGMENT

This case having been duly submitted for decision, and the court, after due deliberation, having rendered a decision (1) denying in part and granting in part plaintiffs' motion for judgment upon the agency record and (2) remanding to the U.S. International Trade Commission for reconsideration of the issue of whether there is reasonable indication that the 12–volt-motorcycle-battery industry in the United States is threatened with material injury by reason of im-

---

**6.** Remand Results at 21.

**7.** *Id.* at 22 (emphasis in original).

**8.** A prior report, issued in conjunction with passage of the Trade Agreements Act of 1979, states that, "in considering threat, high present capacity utilization of the domestic industry and the absence of other indicia of present injury should not be considered as conclusive as to the absence of threat of injury." H.R.Rep. 317, 96th

Cong., 1st Sess. 47 (1979). Indeed, defendants' counsel contend that "the condition of the domestic industry is *never* determinative in an analysis of threat of material injury, whether in a preliminary or in a final investigation" [Defendants' Memorandum, p. 33 (emphasis in original) ], yet the majority's perceptions of the present condition of the industry herein appear to be controlling considerations on their part.

ports from Taiwan; and the Commission having submitted to the court the results of its reconsideration of that issue; and the court, after due deliberation, having rendered a decision on those results; Now, therefore, in conformity with the aforesaid decisions, it is

ORDERED, ADJUDGED and DECREED that plaintiffs' motion for judgment upon the agency record be, and it hereby is, denied in part and granted in part as per the aforesaid decisions; and it is further

ORDERED, ADJUDGED and DECREED that the preliminary determination of the U.S. International Trade Commission after remand that there is no reasonable indication of a threat of material injury to the 12–volt-motorcycle-battery industry in the United States by reason of imports from Taiwan be, and it hereby is, reversed; and it is further hereby

ORDERED that the U.S. International Trade Commission issue a preliminary determination that there is reasonable indication of a threat of material injury to the 12–volt-motorcycle-battery industry in the United States by reason of imports of such merchandise from Taiwan.