**AMERICAN GRAPE GROWERS ALLIANCE FOR FAIR TRADE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 84–4–00575.**

United States Court of International Trade.

July 12, 1991.

364

Katten Muchin Zavis & Dombroff, Thomas A. Rothwell, Jr., Joseph A. Vicario, Jr., and James M. Lyons, Washington, D.C., for plaintiff.

Wayne W. Herrington, Office of Gen. Counsel, U.S. Intern. Trade Com'n, Atty. in Charge, Intern. Trade Field Office, and David Cohen, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

Buchman, Schreiber, Macknight, Buchman & O'Brien, T. Raymond Williams, for Wellington Importers.

Covington & Burling, O. Thomas Johnson, Jr., Washington, D.C., for Banfi Products Corp.

Howrey & Simon, Herbert C. Shelley, Washington, D.C., for defendant-intervenor Joseph E. Seagram & Sons, Inc.

Barnes Richardson & Colburn, James H. Lundquist, New York City, for defendant-intervenor Moet–Hennessy U.S. Corp.

Arnold & Porter, Thomas Wilner, Washington, D.C., for defendant-intervenor Brown–Forman Corp.

## MEMORANDUM OPINION AND ORDER

WATSON, Senior Judge.

This case is before the court pursuant to an April 17, 1986 order of the Court of

Appeals for the Federal Circuit (CAFC) remanding the case for reconsideration, and instructing this court to vacate its judgment granting plaintiff's motion for summary judgment.[1] The action challenged negative preliminary determinations of the International Trade Commission (ITC) at the first stage of countervailing duty and antidumping investigations of ordinary table wine from France and Italy.[2]

## BACKGROUND

On January 27, 1984, petitions were filed with the ITC and the United States Department of Commerce on behalf of the American Grape Growers Alliance for Fair Trade. The parties alleged that imports of certain table wines from France and Italy were being subsidized, and sold in the United States at less than fair value. The ITC accordingly instituted preliminary countervailing duty and antidumping investigations pursuant to §§ 703(a) (19 U.S.C. § 1671b(a)) and 733(a) (19 U.S.C. § 1673b(a)) of the Tariff Act of 1930.[3]

On March 21, 1984, the ITC issued its negative preliminary determination, finding no "reasonable indication that an industry in the United States is materially injured, or threatened with material injury, nor is the establishment of an industry in the United States materially retarded, by reason of imports from France and Italy of certain table wine ... which are alleged to be subsidized [or] sold in the United States at less than fair value." 49 Fed.Reg. 10,-587 (1984). As a result, Commerce terminated its investigation of ordinary table wine from Italy and France.

On April 19, 1984, plaintiffs filed a complaint before this court in response to the ITC's determination. The plaintiffs consist of cooperatives and associations involved in the production of ordinary table wines,[4] are parties to these antidumping and countervailing duty proceedings before Commerce and the ITC, and are "interested parties" within the meaning of 19 U.S.C. §§ 1677(9)(C) and 1677(9)(E).[5]

In their complaint, plaintiffs allege that the ITC's determinations are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and not in accordance with law, in that:

—the ITC imposed a standard of proof that is inappropriate and excessive in comparison to the statutory requirements of 19 U.S.C. §§ 1671b(a) and

---

1. *American Grape Growers Alliance for Fair Trade v. United States*, 9 C.I.T. 396, 615 F.Supp. 603 (1985).

2. Investigations Nos. 701–TA–210 and 211 (Preliminary) and 731–TA–167 and 168 (Preliminary), USITC Publ. 1502, 49 Fed.Reg. 10,587 (1984).

3. 19 U.S.C. §§ 1671b(a) and 1673b(a) state:
   Except in the case of a petition dismissed by the administering authority ..., the Commission, within 45 days after the date on which a petition is filed under ... this title or on which it receives notice from the administering authority of an investigation commenced under ... this title, shall make a determination, based upon the best information available to it at the time of the determination, of whether there is a reasonable indication that—
     (1) an industry in the United States—
       (A) is materially injured, or
       (B) is threatened with material injury, or
     (2) the establishment of an industry in the United States is materially retarded, by reason of imports of the merchandise which is the subject of the investigation by the administering authority. If that determination is negative, the investigation shall be terminated.

4. In ruling on a motion to dismiss, the court found that "grape growers were not part of the industry for the purpose of an investigation of injury to the table wine industry and were not interested parties within the meaning of the law." *American Grape Growers Alliance for Fair Trade v. United States*, 9 C.I.T. 103, 105, 604 F.Supp. 1245, 1248 (1985). Defendant's motion to dismiss was granted as to those plaintiffs who were primarily grape growers, and whose grapes "are utilized to a significant extent for other purposes [than] the production of table wine." *Id.* Remaining plaintiffs are Allied Grape Growers, Sun–Diamond Growers of California, the California Association of Wine Grape Growers, the Gibson Wine Company, and Guild Winery and Distillers.

5. Section 1677, in pertinent part, defines an "interested party" as:
     (C) a manufacturer, producer, or wholesaler in the United States of a like product, [and]
     (E) a trade or business association, a majority of whose members manufacture, produce, or wholesale a like product in the United States.

1673b(a), and failed to appropriately consider plaintiffs' *prima facie* case.

—the ITC's determinations were not based on the best evidence available, as required by the statute, and that it failed to consider all information, including accessible, publicly available data, and failed to consider the requisite thorough investigation.

—the questionnaires used by ITC to elicit relevant data were fatally flawed because they failed to clearly specify the information sought.

—the ITC erroneously placed on plaintiffs the burden of proof to provide it with all necessary information.

—the ITC erroneously confined its analyses of import penetration and price to data covering a three year period, notwithstanding that information covering a longer period was before it, and that the ITC had examined a longer period of time considering other relevant criteria.

—the ITC erroneously determined that the volume and market share of the subject table wine imported from France are very small and not a cause of the domestic industry's financial problems, which it admits exist, and because the ITC failed to find that the volume of imports, or any increase in that volume, is significant, pursuant to 19 U.S.C. § 1677(7)(C)(i).

—in reaching its negative determination regarding underselling or price suppression by reason of imports from France and from Italy, the ITC failed to use the best information available, and ignored the 19 U.S.C. § 1677(7)(C)(ii) requirement that the ITC consider the effect of imports in depressing or suppressing price increases which would have occurred otherwise.

—the ITC's determination that the market share held by wines from Italy is flat and not a cause of the domestic industry's financial problems, which the ITC admits exist, are not in accordance with 19 U.S.C. § 1677(7)(C)(i), which directs the commission to consider whether the volume of imports is significant in absolute terms, or relative to production or consumption in the United States.

—in reaching its determination, the ITC placed undue emphasis on the existence of underselling and lost sales to the exclusion of other indicia of injury, and neglected its duty to consider all factors affecting the domestic industry.

—the ITC erroneously determined that decline in the domestic prices was solely attributable to competition between domestic wineries, and not the result of imports of ordinary table wine from Italy and France subsidized and sold at less than fair value.

—the ITC erroneously determined not to cumulate the impact on the domestic industry of imports from Italy and France, based on conclusions that ordinary table wines from Italy and France are not alike, and not marketed to the same customers through the same distribution system.

—the ITC erroneously excluded domestic growers of grapes used to produce ordinary table wine.

—the ITC failed to give sufficient weight to the legislative direction that antidumping and countervailing duty cases involving agricultural products are to be accorded special treatment due to their unique situation.

—the ITC erroneously determined that shipments by domestic wineries increased during the period investigation, because the ITC ignored shipment volume data pertaining to the like product produced in the United States, and instead used information on a broader product category, which includes categories of wine excluded from the investigations by its own definition of "like product."

—the ITC erroneously determined not to exclude certain domestic producers of ordinary table wine that also import the same from Italy and France.

—the ITC failed to consider the market penetration achieved by ordinary table wine imported from Italy; the rapid growth in imports of ordinary table wines from France; the continuing decline in consumption in Italy and France; and the increase in wine production in

Italy and France, and erred in concluding that the financial prospects for the domestic industry are favorable despite present financial losses; loss of market share; reduced shipments; lower employment levels; increased costs; and declining prices.

On August 8, 1985, this court granted plaintiff's motion for summary judgment.[6] In reaching its ruling on plaintiff's motion and defendants' cross-motion for summary judgment brought under Rule 56.1, the court determined that there were two basic issues to decide.[7] The two issues were identified as (1) "whether or not the ITC should have combined or 'cumulated' the imports of table wine from France and Italy, instead of examining them separately; [and] (2) whether or not the ITC applied an erroneous legal standard in determining that there was no 'reasonable indication' of injury or threat of injury." The court held that: (1) the ITC erroneously failed to consider imports from France and Italy in a cumulated manner, and (2) the ITC applied too stringent a standard in determining whether there was a reasonable indication of injury, or threat of injury.

The court found that the ITC based its determination not to cumulate "on a conclusion that the imports from Italy and France did not exhibit a collective 'hammering' effect on domestic wine prices." *American Grape Growers Alliance for Fair Trade v. United States*, 9 C.I.T. 396, 398, 615 F.Supp. 603, 605 (1985) (American Grape Growers). That result was based on the finding that "French imports were concentrated in the traditional white wine category while most of the Italian wines were of an effervescent type," and that "the imports were generally marketed by separate groups of importers." *Id.* The ITC's

decision not to cumulate was found to be erroneous "because it depended on a depth of analysis and specificity of information ... unreasonable to expect, and unlawful to demand, in the preliminary phase of the investigation." *Id.*[8]

The court also found that the ITC was erroneous in applying a more rigorous standard of competition for cumulation of imports subject to investigation than that used for matching the domestic product with the imported one, and that it was error for the ITC to distinguish the Italian effervescent table wine from the traditional table wine. "If imported articles match the definition of the 'like product'," and this court found that the wines in question did, "they should be considered together and further distinctions based on national origin or variations in character are artificial and irrelevant." *Id.* In *American Grape Growers*, the court adopted and incorporated the interpretation of cumulation set out in *Republic Steel Corp. v. United States*, 8 C.I.T. 29, 591 F.Supp. 640 (1984), finding that "[a]rticles which compete with a like product must compete with each other." 9 C.I.T. at 400, 615 F.Supp. at 606. Superficial distinctions, such as those used in advertising, should not be used to avoid cumulation.

In regard to the second issue, the court found that the ITC "use[d] an excessively stringent standard for determining the possibility of injury," in reaching its negative preliminary determination. *American Grape Growers*, 9 C.I.T. at 401, 615 F.Supp. at 607.[9] It held that the petitioners' burden was not one of ultimate proof, but "simply the burden of *raising* the issue of injury, not the burden of proving inju-

---

**6.** 9 C.I.T. 396, 615 F.Supp. 603 (1985).

**7.** Other issues were previously decided when the court found that certain plaintiffs did not have standing to challenge the ITC's determinations, and dismissed them from the action. *See supra* note 4.

**8.** This reasoning is linked to the Court's determination on the other issue determined, regarding the ITC's application of too stringent standards. Thus, this reasoning also may fail now,

pursuant to *American Lamb Co. v. United States*, 785 F.2d 994 (Fed.Cir.1986).

**9.** The court found that at this early stage of investigation, "the ITC became involved in the full analysis of complex, conflicting and incomplete data," rather than more appropriately "concentrating ... on the limited, relatively simple question of whether there is a *possibility* of injury." *Id.*

ry," 9 C.I.T. at 402, 615 F.Supp. at 608,[10] incorporating the analysis in *Republic Steel v. United States, supra.*

The ITC filed a notice of appeal from the court's decision on August 15, 1985, and a motion for stay of enforcement of the final judgment pending disposition of the appeal shortly thereafter. On October 5, 1985, this court denied the ITC's request for a stay. *American Grape Growers v. United States*, Slip Op. 85–104, 7 I.T.R.D. 1461, 1985 WL 25781 (October 7, 1985). The ITC sought a stay pending appeal of this court's August 8, 1985 judgment, which was denied by the CAFC on November 22, 1985. On that day, this court granted plaintiffs' motion seeking an order enforcing the court's August 8, 1985 judgment. *American Grape Growers v. United States*, 9 C.I.T. 568, 622 F.Supp. 295 (1985).[11]

The CAFC's November 22, 1985 order ruled on various motions pending in this matter before that court. In addition to the denial of the ITC's motion to stay proceedings, the CAFC (1) granted Banfi Products Corp.'s motion to consolidate appeals;[12] (2) stayed any proceedings in this appeal pending decision of the related issue in *American Lamb v. United States;* (3) granted appellants forty days after the *American Lamb* decision in which to file or refile briefs, to be followed by the normal briefing schedule, and; (4) granted the American Association of Exporters and Importers' motion to file a brief *amicus curiae. See American Lamb Co. v. United States*, 785 F.2d 994, 998 n. 4 (Fed.Cir. 1986).

Following the February 28, 1986 decision in *American Lamb*, the ITC and Banfi Products moved the CAFC to remand the case to this Court, with instructions to vacate its August 8, 1985 judgment. The CAFC did so on April 29, 1986, ordering this court to reconsider its judgment in light of *American Lamb*. On June 18, 1986, plaintiffs moved this court to reinstate its reversal of the ITC's negative determination, modifying its previous judgment "only to the extent necessary to implement the 'reasonable indication of injury standard' articulated by the CAFC in *American Lamb*." Plaintiffs' Motion to Reinstate Judgment of Reversal at 4. Plaintiffs also moved the court to establish a briefing schedule, and the court granted that motion on December 7, 1987.[13]

## DISCUSSION

At this juncture, two issues require determination. The first, concerning the standard to be applied by the ITC in reaching its preliminary determination, has essentially been determined by *American Lamb*. The second, concerning cumulation, remains to be determined by this court. The court sees no reason to disturb its previous ruling, which ordered the ITC to cumulate table wines from France and Italy before determining whether there was a reasonable indication of material injury, or threat of material injury to the domestic wine industry.

In *American Grape Growers*, this court reversed the ITC's determination that "there was no 'reasonable indication' that the imports of table wine, allegedly subsidized and sold here at less than fair value, were the source of material injury or threat of material injury to an industry in the United States." 9 C.I.T. at 397, 615 F.Supp. at 604. First, we will address the

---

**10.** In this case, the court found that "preliminary determinations constituted prejudgments of questions which the parties are entitled to have investigated fully and fairly in the stages provided by law." *Id.*

**11.** In its November 22, 1985 opinion, this court directed the ITC to make preliminary determinations in this matter by applying the "possibility of injury" standard set out in this court's August 8, 1985 decision. On December 3, 1985, the ITC made preliminary affirmative injury determinations.

**12.** Defendant-intervenor Banfi Products Corp. is a United States importer of Italian wine. The appeals, which were consolidated into appeal No. 85–2717, were No. 85–2717 (the ITC's appeal to the CAFC from this court's August 8, 1985 decision), and No. 86–556 (Banfi's appeal from the same).

**13.** Plaintiffs' motion for additional briefing was opposed by the ITC.

finding that "the determinations [were] subject to ... an excessively stringent standard for determining the possibility of injury." 9 C.I.T. at 401, 615 F.Supp. at 607.

In *American Grape Growers*, this court held, "[i]nstead of concentrating at this early stage on the limited, relatively simple question of where there is a *possibility* of injury, the ITC became involved in the full analysis of complex, conflicting and incomplete data." *Id.* This was found to be inconsistent with the law, which the court interpreted as requiring merely that in finding "no reasonable indication of injury the ITC [must] say, in effect, that the information before it does not raise the *possibility of injury* to the domestic industry." *Id.* (emphasis supplied) Thus, the more rigorous standard, requiring a "full scale investigation" and "causation analysis," was rejected. The court found that the ITC's "preliminary determinations constituted prejudgments of questions which the parties are entitled to have investigated fully and fairly in the stages provided by law," resulting in the loss of "any meaningful difference between this determination and a final determination." 9 C.I.T. at 402, 615 F.Supp. at 608.

In reaching its decision, this Court relied on its previous determination in *Republic Steel*, which held:

> The object of these determinations should have been simply to find whether there were any facts which raised the possibility of injury. The resolution or interpretation of conflicting facts should have been reserved for a possible final injury determination.

8 C.I.T. at 40, 591 F.Supp. at 650 (emphasis omitted). The court applied the same standard to the determination of the threat of injury. 8 C.I.T. at 40–41, 591 F.Supp. at 650–51. In fact, it found that "because the evidence needed to support the indication of threat is more difficult to obtain than evidence of actual injury, it is reasonable to predicate the need for further investigation

of a threat on the barest indications." 8 C.I.T. at 41, 591 F.Supp. at 651.

That aspect of *American Grape Growers* was overruled by the CAFC in *American Lamb*. The court of appeals vacated the Court of International Trade's (CIT) order in *American Lamb Co. v. United States*, 9 C.I.T. 260, 611 F.Supp. 979 (1985), which relied upon the same standard used by this court in *American Grape Growers*.[14] In *American Lamb*, the CIT stated that the ITC:

> may not weigh conflicting evidence in making a preliminary determination that material injury or the threat of material injury exists; in a preliminary investigation, the Commission's responsibility is simply to find whether any facts reasonably raise the possibility of injury.

9 C.I.T. at 262, 611 F.Supp. at 980.

The CAFC found that since its earliest investigations under the Trade Act of 1974, the ITC has:

> determin[ed] that there is no "reasonable indication" of material injury or threat when: (1) there is clear and convincing evidence of the absence of such reasonable indication; and (2) the record shows it extremely unlikely that evidence of a "reasonable indication" would be developed in a final investigation.

785 F.2d at 996. The CAFC rejected the CIT's mere possibility standard, finding that while the reasoning may itself be acceptable, it was not in accord with the statute. In so holding, the CAFC determined that "[t]he statute calls for a reasonable indication of injury, not a reasonable indication of need for further inquiry." *Id.* at 1001.

Finally, the CAFC in *American Lamb* determined that while the ITC's negative preliminary determinations are reviewable by the CIT, the increased difficulty in "overturn[ing] a negative preliminary determination when ITC had weighed conflicting evidence cannot be a factor in evaluating the permissibility of ITC's method of determining the presence or absence of

---

**14.** In *American Lamb*, the CIT relied upon the standard of review set out by this court in *Republic Steel Corp. v. United States*, 8 C.I.T. 29,

591 F.Supp. 640 (1984), as well as in *Jeannette Sheet Glass Corp. v. United States*, 9 C.I.T. 154, 607 F.Supp. 123 (1985).

a 'reasonable indication' of injury or threat of injury." *Id.* at 1004. Thus, *Republic Steel* and its progeny are overruled to that extent.[15]

In seeking reinstatement of the judgment of reversal, plaintiffs claim that the threshold of proof required by *American Lamb* would not produce a different result in this action than that previously reached by this court. *See* Plaintiffs' Motion to Reinstate Judgment of Reversal. They claim that while the current standard allows the ITC to weigh evidence in reaching its preliminary investigation, it must still "conduct a thorough and careful inquiry into the allegations of injury set for the ... and all of the facts" which support that allegation.

■ The court does not agree with plaintiff's contentions, inasmuch as it did not previously find that the ITC did not "conduct a thorough and careful inquiry." The effect of *American Lamb,* in this case, alters the standard which the ITC may apply in reaching its preliminary determination. It does not alter the power or role of this court in reviewing those determinations.

In *American Grape Growers,* this court concluded that the ITC's preliminary determinations "were not in accordance with the law." 9 C.I.T. at 397, 615 F.Supp. at 604. The statute provides, "[t]he court shall hold unlawful any determination, finding, or conclusion found (A) in an action brought under paragraph (1) of subsection (a) of this section, to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..." 19 U.S.C. § 1516a(b)(1)(A).

In *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), the United States Supreme Court defined the "arbitrary and capricious" standard as providing a narrow scope of re-

view. The Supreme Court held that a reviewing court must consider whether an agency's decision is based upon and considers the relevant factor, and whether there is a clear error of judgment.[16] If the agency meets the requirement of articulating a " 'rational connection between the facts found and the choice made,' " *id.* at 285, 95 S.Ct. at 441 (*citing Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962)), and "the agency's path may be reasonably discerned," *id.* 419 U.S. at 286, 95 S.Ct. at 442, the court may not substitute its own judgment for that of the agency.

It is clear that in reviewing agency determinations, this court must be "deferential to the [agency's] determinations, findings and conclusions." *Jeannette Sheet Glass Corp. v. United States,* 11 C.I.T. 10, 15, 654 F.Supp. 179, 183 (1987). In *Jeannette Sheet Glass,* the court held, "this court is not permitted to itself weigh the evidence and substitute its judgment for that of the agency, even though had the matter been raised initially before the court, its decision may have been different." *Id.* The court stated:

> not only must the court avoid substituting its judgment for that of the agency, it may reverse the agency's action only where there is "a clear error of judgment" and where "there is no rational nexus between the facts found and the choices made."

*Id.* (citations omitted.) *See also Wells Manufacturing Co. v. United States,* 11 C.I.T. 911, 919–20, 677 F.Supp. 1239, 1245–46 (1987).

■ The CAFC found that even "the lack of an explicit statement in the agency's published notices ... has prevented neither the trial court nor this court from discerning the path of the agency in its decision-making process." *Ceramica Re-*

---

**15.** For other cases in which the standard set out in *American Lamb* is applied, *see Yuasa–Gen. Battery Corp. v. United States,* 12 C.I.T. 624, 688 F.Supp. 1551 (1988); *Maverick Tube Corp. v. United States,* 12 C.I.T. 444, 687 F.Supp. 1569 (1988); *Wells Mfg. Co. v. United States,* 11 C.I.T. 911, 677 F.Supp. 1239 (1987); *Jeannette Sheet*

*Glass Corp. v. United States,* 11 C.I.T. 10, 654 F.Supp. 179 (1987).

**16.** *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

*giomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed.Cir.1987). Where the clarity of an agency's decision is less than ideal, it may nevertheless be upheld by the court if its path may be reasonably discerned. In this case, pertaining to the issue of "whether or not the ITC applied an erroneous legal standard in determining that there was no 'reasonable indication' of injury or threat of injury." *American Grape Growers*, 9 C.I.T. at 397, 615 F.Supp. at 604, the agency's path is discernible. This court has not ruled otherwise. Rather, the court had held that the ITC applied an incorrect standard, a determination which was vacated by the court of appeals.

The ITC summarized the results of its investigations as follows:

> Although some domestic producers of ordinary table wine are experiencing financial problems, we do not find a reasonable indication of a causal connection between any such problems and the subject imports. Specifically, the volume and market share of imports from France are very small, and there is no evidence on the record of significant underselling, or of price suppression or lost sales by reason of imports from France. The volume of imports from Italy is significant, but their share of the U.S. market has remained flat during the 1981–83 period under investigation. Furthermore, there is no evidence on the record of significant underselling, or of price suppression or lost sales by reason of imports from Italy.

*Certain Table Wine from France and Italy*, USITC Pub. 1502, Inv. Nos. 701–TA–210 and 211 (preliminary), and 731–TA–167 and 168 (preliminary) (March 1984).

■ This court is satisfied with the analysis provided in the ITC determination results, and accepts its findings to the extent that the ITC applied the standard set out in *American Lamb* to its results in these preliminary determinations regarding certain table wine from France and Italy. As in *Armstrong Bros. Tool Co. v. United States*, 489 F.Supp. 269 (Cust.Ct.1980), plaintiffs "essentially challenge discretion-

ary findings by the [ITC]." *Id.* at 278. In *Armstrong Bros.*, the Customs Court stated:

> [I]t is not the function of the court in reviewing an injury determination of the commission under the Antidumping Act to weigh the evidence or substitute its judgment for that of the commission ... Despite our daily diet of challenges to administrative agency action and our resulting repeated efforts to articulate the limits of judicial review of such actions we nevertheless are continually called upon to substitute our judgment on factual issues for that of the agency charged by congress with the initial responsibility of making, evaluating, and acting upon those facts. *It is well settled that the fact-finding function is within the exclusive province of the administrative agency.*

*Id.* Here also, this court finds "it would be impermissible ... to substitute [the court's] judgment for that of the commission or to re-weigh the evidence as to specific factual findings." *Id.* at 278–79.

That is not the case, however, in regard to the ITC's decision not to cumulate the subject imports from France and Italy in reaching its determinations. In its results, the ITC stated that they did "not find it appropriate to cumulate the imports from Italy and France in making our determination." Certain Table Wine from France and Italy at 15 n. 48. The reasoning is:

> The commission has the discretion to consider the combined impact of allegedly unfair imports "only when the factors and conditions of trade show its relevance to the determinations of injury...." In Certain Carbon Steel Products From Belgium, the Federal Republic of Germany, France, Italy, Luxembourg, the Netherlands, and the United Kingdom, Invs. Nos. 731–TA–18–24 (P) USITC Pub. No. 1064 (1980), the commission majority used a cumulative analysis to combine imports whose share of the market was otherwise insignificant because the subject imports were "comparable and compete in the same markets[,]" ... thereby exhibiting a collective "hammer-

ing" effect on the domestic industry disproportionate to the imports market share alone. The factors considered relevant included: the fungibility of the subject imports, the markets affected by the various imports, volume and trends of the imports, marketing practices of each country, market shares, pricing practices, inventory practices, and the presence or absence of coordinated action.

*Id.* (citations omitted).

The ITC goes on to state:

In these investigations, imports from France are concentrated in the traditionally vinified white wine category; most of the imports from Italy are of the sweet, effervescent, Lambrusco-type wines discussed *supra*. In addition, imports from these respective countries are generally marketed by separate groups of importers. For these reasons, we do not believe that imports from Italy and France are exhibiting a collective "hammering effect" on domestic wine prices such that consideration of their combined effect is necessary or appropriate. Furthermore, even had we cumulated these imports, it would not have changed the result of our analysis.

*Id.*

The court again rejects the ITC's perfunctory dismissal of any reason to cumulate the subject imports, particularly its finding that "even had we cumulated ..., it would not have changed the result of our analysis." The level of conjecture evident in such a statement is inappropriate and unacceptable.

■ In *American Grape Growers*, this court found "the decision not to cumulate was erroneous because it depended on a depth of analysis and specificity of information which is unreasonable to expect, and unlawful to demand, in the preliminary phase of the investigation." 9 C.I.T. at

398, 615 F.Supp. at 605. The court recognizes the relationship between that finding and the reasoning which has since been overruled by *American Lamb*.[17] Thus, the court's order requiring the ITC to cumulate on that basis must fail.

■ However, the court provided further reasoning for its order to cumulate which is not affected by *American Lamb*. It remains "error for the ITC to make the standard of competition needed to justify cumulation of the imports subject to investigation more rigorous than the standard used for matching the domestic product with the imported product." *Id.* The court refers to its findings in the earlier opinion, and its incorporation, then and now, of the cumulation analysis set out in *Republic Steel Corp. v. United States*, 8 C.I.T. 29, 591 F.Supp. 640 (1984).

In determining in *American Grape Growers* that "[c]umulation should not be avoided by the sort of superficial product distinctions that are made in advertisements," the court rejected the notion that the decision to cumulate should be controlled by the ever present ability "to develop rational distinctions between products in terms which ultimately relate to questions of consumer taste." 9 C.I.T. at 400, 615 F.Supp. at 606. Then as now, the court finds that in this case, cumulation is necessary to facilitate a meaningful determination of injury, or threat of injury.[18]

■ The Tariff Act of 1930, as amended, defines "like product" as, "a product which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to an investigation under this subtitle." 19 U.S.C. § 1677(10) (1980). The court finds that the subject imported ordinary table wines in this investigation are "like products."

At the time of this investigation, there was no specific statutory provision for cu-

---

**17.** The court held "that the ITC has inflated the preliminary determination into an investigative evaluation of conflicting or incomplete material far beyond the intention of the law." *Id.*

**18.** The court reasserts its previous finding that in the context of a preliminary determination,

"[i]t is unreasonable to demand that the products be fungible, unreasonable to require coordinated action and unreasonable at this early stage to engage in the measurement and weighing of a host of conflicting and ambivalent marketing and pricing factors." 9 C.I.T. at 400, 615 F.Supp. at 607.

mulation. Since then, the statute has been amended to address cumulation as follows:

> For purposes of clauses (i) and (ii) [volume and price], the commission shall cumulatively assess the volume and effect of imports from two or more countries of like products subject to investigation if such imports compete with each other and with like products of the domestic industry in the United States market.

19 U.S.C. § 1677(7)(C)(iv) (1984). Although this clause was not enacted at the time, and thus does not apply in the instant investigation, it does present some assistance in understanding the direction of the law in this area.

In *Republic Steel*, this court held that, "the proper test for cumulation is whether subsidized or allegedly subsidized imported products are competing with the product of a domestic industry during a period when the effect of these importations is being felt by the domestic industry." 8 C.I.T. at 34, 591 F.Supp. at 645. That test applies in this case and, as stated in our previous opinion, *see American Grape Growers v. United States*, 9 C.I.T. at 399–400, 615 F.Supp. at 606–07, these subject imports meet that test, and should have been cumulated.

This determination is supported by case law in the area, both prior and subsequent to the 1984 implementation of the statutory definition.[19] In *Jeannette Sheet Glass Corp. v. United States*, 9 C.I.T. 154, 607 F.Supp. 123 (1985), *on reconsideration, vacated in part and adhered to in part*, 11 C.I.T. 10, 654 F.Supp. 179 (1987), the court recognized *Republic Steel's* holding, "that the proper test for cumulation is whether the imported products are competing with the product of a domestic industry and not

the volume or trend in the volume of a particular segment of importations. *Id.* 607 F.Supp. at 130.

In more recent cases,[20] the court has determined that cumulation is appropriate where "there is sufficient evidence of a reasonable overlap in competition." *Wieland Werke, AG v. United States,* — C.I.T. ——, 718 F.Supp. 50, 62 (1989).[21] The cumulation provision of the statute has been interpreted as requiring the ITC to "cumulate the volume and price effects of imports in its material injury analysis when the imports compete with each other and with the domestic like product." *Metallverken Nederland B.V. v. United States,* — C.I.T. ——, 728 F.Supp. 730, 741 (1989). In *Granges Metallverken AB v. United States,* — C.I.T. ——, 716 F.Supp. 17 (1989), the court held:

> The commission need not track each sale of individual sub-products and their counterparts to show that all imports compete with all other imports and all domestic like products. Rather, the commission need only find evidence of reasonable overlap in competition to support its determination to cumulate imports.

— C.I.T. at ——, 716 F.Supp. at 22. Further, completely overlapping markets have not been required to sustain cumulation. *Florex v. United States,* — C.I.T. ——, ——, 705 F.Supp. 582, 592 (1989).

The CAFC has recognized the cumulation of goods from more than one country by the ITC in determining material injury. *Fundicao Tupy S.A. v. United States,* 859 F.2d 915, 917 (Fed.Cir.1988). The court of appeals affirmed the CIT ruling, which found that the language of the 1984 cumulation provision did not conflict with the "basic causation provision of the Tariff Act of 1930," and "presents no conflict with

---

**19.** For discussion of statutory background, *see Chaparral Steel Co. v. United States,* 12 C.I.T. 873, 698 F.Supp. 254, 258–60 (1988), *rev'd,* 901 F.2d 1097 (Fed.Cir.1990); *LMI–La Metalli Industriale, S.p.A. v. United States,* — C.I.T. ——, 712 F.Supp. 959, 964–7, (1989), *aff'd in part and rev'd in part,* 912 F.2d 455 (Fed.Cir.1990).

**20.** Although the codification of cumulation which is applied in these cases does not apply to the case at bar, the similarity of the principle causes these cases to be helpful in this analysis.

Further, the cases themselves rely upon prior cases decided before the statute was amended to include cumulation.

**21.** For a discussion of *Wieland Werke* and an overview of cumulation, *see* Recent Developments, *Imports–Cumulation and Unfair Trade Competition–Cumulation Deemed Proper When a "Reasonable Overlap" of Competition Exists,* 19 Ga.J.Int'l & Comp.L. 639 (1989).

other provisions of the law, and is in harmony with the intention of Congress." *Fundicao Tupy S.A. v. United States*, 12 C.I.T. 6, 678 F.Supp. 898 (1988), *aff'd*, 859 F.2d 915 (Fed.Cir.1988). Again, although not directly controlling, the post–1984 cases offer significant insight into Congress' intention in this area, which assists us where "[p]rior to the 1984 Act, the commission's cumulation practice was characterized by internal inconsistency and confusion." *Bingham & Taylor Div., Virginia Industries, Inc. v. United States*, 815 F.2d 1482, 1485 (Fed.Cir.1987).

Even where the court found that the ITC was not required to cumulate, it recognized, *"Republic Steel* held that in a preliminary countervailing duty determination, cumulation was essential to determine the possibility of material injury." *Gifford Hill Cement Co. v. United States*, 9 C.I.T. 357, 374, 615 F.Supp. 577, 590 (1985). *See also Lone Star Steel Co. v. United States*, 10 C.I.T. 731, 734, 650 F.Supp. 183, 186 (1986). In other cases, cumulation was successfully and properly avoided where the ITC's decision not to cumulate was reasonable and based on substantial evidence. *See Marsuda–Rodgers Int'l v. United States*, —— C.I.T. ——, 734 F.Supp. 1019 (1990); *Asociacion Colombiana de Exportadores de Flores v. United States*, 12 C.I.T. 1174, 704 F.Supp. 1068 (1988); *USX Corp. v. United States*, 12 C.I.T. 844, 698 F.Supp. 234 (1988). That is not the case here.

Plaintiff argues "[b]oth trade law and the need for accuracy requires that the commission cumulate the French and Italian imports of ordinary table wine." Brief in Support of its Motion to Reinstate Judgment of Reversal at 24. As indicated in the court's previous ruling in this case, we agree. The fact that the ITC's determinations on cumulation were discretionary prior to the 1984 cumulation provision does not alter our previous finding that its failure to cumulate in this case was an abuse of that discretion. No argument presented by defendant United States, or defendant-intervenors, persuades the court otherwise.

## CONCLUSION

Plaintiff's motion to reinstate judgment of reversal is denied. Upon reconsideration of this matter in light of *American Lamb*, this court again remands this matter to the ITC for its redetermination pursuant to this Memorandum Opinion and Order. The ITC's December 3, 1985 affirmative preliminary injury determinations, made pursuant to this court's previous, now vacated order, should itself be vacated. Accordingly, the ITC should conduct preliminary countervailing duty and antidumping investigations in this matter, pursuant to statute, applying the standard for determining the possibility of injury established by *American Lamb*. In conducting its investigation, the ITC shall cumulate the subject imports, i.e., ordinary table wine from France and Italy.